## Kurz v. Brusch.

1. HOMESTEAD. The homestead embraces the lot and buildings appurtenant to the house, including those used and occupied by the owner in the prosecution of his ordinary business, but it does not include buildings which are rented to others and yield a revenue to the owner.

2. SAME OCCUPATION. The occupation of a building as a homestead after the execution of a trust deed conveying the same, in which the wife did not concur, cannot change the *status* of the parties.

*Appeal from Dubuque City Court.*

FRIDAY, JUNE 13.

LOT 482 in the city of Dubuque is subdivided into five portions. On the 17th of May, 1858, defendant being the owner of the " South and South Middle Fifth," (styled in the deed the south two-fifths), conveyed the same by a trust deed of that date to Woodruff, to secure a debt to one Ives. Such proceedings were had, under this deed, that afterwards, on the 30th of April, 1860, the premises were sold and conveyed by the trustee to plaintiff. He then commenced this action to obtain possession. Defendant answered, set-

ting up, among other things, that the premises were his homestead, at the time of making said trust deed. The jury found for the plaintiff as to the south fifth, and as to the south middle fifth, that it was defendant's homestead, and should be set off to him as such. Plaintiff appeals.

*Bissell & Shiras* for the appellant, cited *Charless & Blow* v. *Lamberson*, 1 Iowa, 435; and *Yost* v. *Devault*, 3 Id., 345.

*E. Gottschalk* for the appellee.

WRIGHT, J. — There is no controversy as to the south fifth. Nor is there any as to a portion of the south middle fifth. On the north side of this, and some distance from the front, or White street, is a one-story brick cottage, occupied by the defendant and his family at the time of making the deed, in which deed his wife did not join. As to this cottage house and such portions of the lot, (the south middle fifth,) as were in good faith used as appurtenant thereto, plaintiff concedes the verdict is right. But as to all other parts of that subdivision, he insists that the verdict was wrong.

The facts are simply these: There is a double brick house situated on this lot, fronting on White street. This was never occupied by defendant as his homestead, prior to the trust deed, nor at any time prior to the commencement of this action, except about two months in the year 1859. It was rented, however, to a number of tenants, and used as shops, defendant having no possession except through such tenants. On the south half there was a planing mill, which was rented on the 1st of May, 1857, for five years, at an annual rent of one hundred and fifty dollars.

Plaintiff now claims that as to all said south middle fifth except the brick cottage, and such portions of the lot as

were in good faith used as appurtenant thereto, he was entitled to recover. In other words, he insists that the double brick house is no part of the homestead.

The principles settled, and the reasoning used by this court in prior cases, bearing more or less directly upon the question here involved, must reverse this judgment.

Thus, in *Charless & Blow* v. *Lambertson*, 1 Iowa, 435; it is said: "To be the homestead, it must be used, and used for the purpose designed by the law, to wit: as a home, a place to abide, a place for the family. The language of the law is clear. It is that a homestead, consisting of a certain quantity of land, and the dwelling-house thereon, and its appurtenances, *owned and occupied*, shall not be subject to forced sale."

In *Rhodes* v. *McCormick*, 4 Id., 368; this language is used: "The object of the law is to protect the home and preserve it for the family, and not shops, stores, rooms, hotels and office rooms, which are rented and occupied by other persons. This construction attains the object of the Code in exempting a homestead, and prevents the abuse of a law which was designed to discourage and not encourage fraud."

And so in *Ackley* v. *Chamberlain*, 16 Cal., 181. "A homestead is the residence of a family, is the place where the home is, and it would seem unreasonable, upon first impressions, that premises should be regarded as a homestead, unless devoted principally to such residence and home."

But aside from these cases, the statute, to our minds is clear and decisive upon this point. After providing that "The homestead must embrace the house used as a home," "and if he, the owner, has two or more houses thus used by him at different times and places, he may select which he will retain," that "it may contain one or more lots or tracts of land with the buildings thereon, and other

appurtenances," it then declares, (Code, 1851, § 1253,) "It must not embrace more than one dwelling-house, nor any other buildings except such as are properly appurtenant to the homestead as such, but a shop or other building situated thereon, and really used and occupied by the owner in the prosecution of his own ordinary business, and not exceeding three hundred dollars in value, may be deemed appurtenant to such homestead."

This section, by the assertion of what may be, as well as what shall not be considered as appurtenant to the home-stead, and hence a part of it, frees the question of all difficulty. The purpose and object of the law is most clearly shown. It gives the " dwelling-house," and a shop really occupied in the prosecution of his ordinary business by the owner, but not buildings that are not thus used and occupied. The mechanic needs his shop, the physician his office, to assist him in procuring means for the maintenance and support of his family, as he needs his dwelling. This is the theory of the statute, and he is protected in the one as much as the other. Or, as is said by HEMPHILL, C. J., in *Pryor* v. *Stone*, 19 Tex., 371 ; in giving a construction to the peculiar constitutional provisions and statutes of that state : " The exemption should not be construed, as reserving merely a residence where a family may eat, drink and sleep, but also a place where the head or members may pursue such business or avocation as may be necessary for the support and comfort of the family."

But it was never intended that other buildings though on the same lot, buildings "not appurtenant to the home-stead, as such," those not " used and occupied by the owner in the prosecution of his own ordinary business," — those rented, and yielding a revenue to the owner, — we say it was never intended that such should be exempt. If so, the law could be made the cloak for the most stupendous frauds. For if one such building may be exempt, so may

all that could be placed upon a half acre, if in a town, or forty acres, if in the country, without limit as to value. And thus the statute, instead of securing to the family a home, where they may be sheltered, and live beyond the reach of financial misfortune and the demands of creditors, would give them property never contemplated by its letter or spirit.

The occupation of the "double brick house" after the execution of the trust deed, cannot change the legal status of the parties. Its subsequent adoption (even if there was such adoption) would not affect the validity of the deed, nor release the property from its operation. (*Yost* v. *Devault*, 3 Iowa, 345.)

The cause will therefore be reversed, and remanded. So much of the south middle fifth as was in good faith actually used as appurtenant to the "cottage dwelling," at the time of the execution of the trust deed, as defined by this opinion, should be set apart to the defendant and as to all other parts, the plaintiff should have judgment.