Qualified as Justice of the Supreme Court August 30, 1873. From this date Hon. Wesley Ogden was Presiding Justice.

---

## Arnold and Bridges & Nolan v. Adams, Jordan .et als.
## James Nolan v. Geo. W. Reed et al.

N. owned a 120-acre tract of land adjoining the town of Navasota, occupied by him as a rural homestead, eighty acres of which he donated to the railroad. The corporation of Navasota extending its boundaries over the homestead of N., he subdivided his land into lots, selling off all but four blocks, which he still retained as a homestead. *Held*, that extending the boundaries of the corporation did not change the homestead from a rural to a town homestead; nor did the erection of houses for rent on the land retained, subject it to forced sale.

Appeal from Grimes. Tried below before the Hon. James R. Burnett.

The facts sufficiently appear in the opinion of the court.

*John C. Easton*, and *Preston & Smith*, for appellants.

*J. C. Hutcheson*, for appellees.

McAdoo, J.—In 1859 James Nolan lived upon a tract of 120 acres of land in Grimes county. In that year, when the railroad depot was located upon the tract, No-

lan donated to the Central Railroad 80 of the 120 acres.
Nolan purchased the 120 acres from Duke in 1856, and
settled and has lived on the land as a homestead ever
since.

After his donation to the railroad the land was laid off,
on which he resided, into lots and blocks, and which now
forms a part of the town of Navasota.

In 1859 he erected on what is designated as Block 1 of
Nolan's plan of Navasota, a few hundred yards west of
his then residence, a hotel.

About the first of January, 1860, he moved his family
into this hotel, and occupied that as a family residence.
Immediately in the rear of this Block 1, which runs back
115 feet from the front on Washington street, on another
block, numbered 17 on Nolan's map, and which is separ-
ated by an alley or passway from Block 1, he erected a
small house for servants, and had his stables and well
thereon.

These two blocks, so situated, were occupied as a
homestead until 1865, when the hotel was burned. After
the destruction of the hotel, Nolan moved into the small
house on the rear block, and has lived, with his family,
in that house ever since.

Some time after the fire he erected buildings on Block
1, which were rented out as business houses to divers and
sundry persons, and the income therefrom has constituted
the means of support of the family. Two or three houses
have been sold by him; one to Arnold & Bridges, and
one to Schafer. He has at all times claimed these two
blocks as a homestead, and no more.

The proof shows that the property retained after the
donation to the railroad, and after being divided into lots
and blocks, was worth less than $2000.

Several judgments were rendered in the District Court
of Grimes county against Nolan, previous to the convey-

ances of Nolan to Arnold, and Bridgers, and Shafer, in 1869. Executions were levied on all of block No. 1, including the lots of Arnold, and Bridgers, and Schafer. The several parties, Nolan, Arnold, Bridgers and Schafer, obtained writs of injunction restraining the sheriff and the plaintiffs in execution from selling the property levied on.

On final trials in the District Court of these injunction suits, the injunctions were dissolved, and by consent of all parties an appeal was taken to this court, all the causes to abide the result of this.

The only question for this court to decide is, is the property levied on subject to forced sale, under the Constitution and laws of this State? Is block No. 1 a part of the homestead of James Nolan, the appellant? Or has he, by reason of the facts disclosed, lost his hold upon it as a part of his homestead?

In 1856, and until 1859, it was a part of his rural homestead. In 1860, and until 1865, it was the very part of his homestead upon which he resided with his family. If the homestead lost its character as a rural homestead, on the laying out of the town of Navasota, it was still, in 1869, when the buildings were rented for residence, together with rear block No. 17, of less value than $2000. The two blocks became then the homestead of Nolan.

When the right once accrues as a rural homestead, can that right be destroyed except by an abandonment of it as such?

Does this erection of houses for rent, or other purposes, on a rural homestead, thereby destroy its character as a homestead? Clearly not. At the time the property was designated as a rural homestead there was no town near it. It was less than two hundred acres. He subsequently reduced it, by his donation to the railroad, to forty acres. He subsequently reduced it to two blocks. The proof

clearly shows that he was opposed to the extension of the corporate limits of the town over his remaining property. It was, nevertheless, embraced in the corporate limits. This fact brings this case directly within the rule of Bassett v. Messner, 30 Texas, 604.

In that case Judge Lindsay says: "Nothing appears in the agreed case to show that D. Messner, the head of the family, gave his express assent to the change of his rural to a suburban homestead. Possibly this express assent, had it been given by him, might have given some color of justice to the view insisted upon by the appellant, as the husband or head of the family, who has the power of disposition of the community property in acquiring, by his own act, a new homestead, exposes his old one to the rapacity of his creditors, if such he has. But even in this case it is very questionable if it would not require the concurrent assent of the wife, made manifest under due form of law, to change the character and nature of the homestead."

And Judge Lindsay concludes the opinion in that case in these words: "We conclude that the Legislature itself could not work this metamorphosis of a rural into a suburban homestead without the consent of these peculiar words of the Constitution; much less could the local municipal corporation of Brenham do so; and, certainly, we do not feel inclined, by any judicial interpretation, to achieve a result so repugnant to the letter and spirit of our domestic Constitution."

The judgment in the court below is erroneous, and must be reversed; and the proper judgment in the case is rendered here, that the injunctions in this case, and the others embraced in the agreement of parties, be perpetuated.

REVERSED AND RENDERED.