JOHN ASHTON v. RUTH A. INGLE, et al.

1. LIEN OF JUDGMENT; *Subsequent Occupancy of Lands by Owner, as a Homestead.* Where a judgment for money is rendered in the district court against a person who owns real estate within the county, and such real estate is not the homestead or any part thereof of the owner, a judgment-lien attaches to such real estate, and under and by virtue of such judgment-lien, such real estate may be levied upon and sold under an execution issued on such judgment, although at the time of such levy and sale, the property may be occupied as the homestead of the owner.

2. TENANT HOUSES, *Rented by Owner, No Part of Homestead.* Where a lot (or part of a lot) with a house thereon, situated in an incorporated

city, is rented for a money rent to a tenant, who is not a servant or an employé of the owner, with the intention that such house and lot shall become the home and residence of such tenant and his family, and they actually do become the home and residence of such tenant and his family, such house and lot cannot be considered as a part of the homestead and residence of the owner so as to be exempt from legal process under the homestead exemption laws, although such lot may adjoin the homestead of the owner.

### *Error from Leavenworth District Court.*

THE district court, at March Term 1878, decided against the homestead claim of *Ashton,* and gave judgment in favor of Mrs. *Ingle,* judgment-creditor, and *Lowe,* sheriff, dissolving a preliminary injunction granted in favor of *Ashton* by the probate judge, dismissed *Ashton's* action, and adjudged that defendants *Ingle* and *Lowe* go hence without day, and recover of *Ashton,* plaintiff, their costs. *Ashton* appeals, and brings the case here on error.

*L. M. Goddard,* for plaintiff:

The plaintiff claims that the homestead exemption provided in § 9, art. 15 of the constitution, and by § 1 of ch. 38 of Gen. Stat., prescribes no limitation upon the use of the land specified, but explicitly exempts from sale one entire acre in an incorporated city, if the family of the owner reside thereon, *together with all improvements.* The land claimed by Ashton contains *less* than one acre. We have been able to find no homestead exemption in any other state as broad and liberal as that of Kansas. In those states whose homestead laws most nearly resemble our own the courts have sustained the principle for which we contend. In Minnesota, where the language of the homestead act is, "A homestead consisting of a quantity of land, not exceeding in amount one lot," etc., the court has held that "the debtor is entitled to the quantity of land, and no limitations are imposed upon the uses of such land, provided it is the residence of the owner." 10 Minn. 154, 157; 21 Minn. 302. See also, 1 Nev. 568, 607. In Illinois, the exemption is, "the lot of ground and

the buildings thereon, occupied as a residence, and owned by the debtor, being a householder, and having a family," etc. In construing this provision the court say: "The whole lot of ground is covered by the exemption, not some part of it, and the lot included all the buildings upon it." 58 Ill. 427. And the plain and obvious import of the language used in our constitution and exemption law, is, to give the debtor, (as the court in the above case expresses it,) "the full enjoyment of the whole lot of ground exempted, used in whatever way he might think best." Else why use the words "*together with all improvements thereon.*" A construction which exempts an acre of land so long as it remains vacant, with the exception of the family residence, and subjects it to sale the moment it is rendered beneficial by leasing a portion, or erecting any other building thereon, is without reason, and imposes a hardship upon the debtor without in any way benefiting the creditor. It will not be contended that the owner of a homestead consisting of farming land, by leasing a portion of the same would divest it of its homestead character; and if not in that case, upon what principle should a different rule apply to the homestead in a city? (1 Nev. 571; 11 Allen, 194; 9 Wis. 70; 2 Dillon, 339.) The purpose and object of homestead laws are beneficent and humane, and should be liberally construed; 28 Vt. 674; 36 Wis. 73; 4 Cal. 26. If the theory of defendants be correct, then the husband can divest land of its homestead character without the consent of his wife, and accomplish indirectly what the courts say he cannot do directly. He cannot dispose of the acre or any portion thereof by deed, but by leasing portions of the same he thereby divests it of its homestead character, and the same may be then sold on execution, and his wife deprived of her right therein without her consent. Such a construction is in direct conflict with the views of this court, as expressed in *Morris v. Ward*, 5 Kas. 244.

*Thomas P. Fenlon*, and *Lucien Baker*, for defendants:

Two questions are plainly presented by the record in the case. The first is, the construction of § 9 of art. 15 of the

state constitution; and the second is, is the plaintiff in position, under the facts in the case, to ask the equitable action of the court? The answers to both propositions are fatal to plaintiff's case.

1. The record shows that the two houses levied on were rented at the date of the levy, and were then and had been for years "occupied" by other families under leases made by Ashton. The testimony of defendant Lowe, the sheriff who made the levy, shows that just sufficient land was measured off, in the levy made, to give the proper use of the well or cistern at the end of the levy, and no more, and did not interfere with the convenient and proper use of the homestead proper. As the entire lot or piece of land claimed by Ashton as his homestead does not exceed one acre, and the same being "within the limits of an incorporated city," and part of the same being "occupied as a residence by the family of the owner," and the other part, to-wit, that part levied on under the Ingle judgment, being occupied, not by the family of the owner, but by other parties as rent-paying tenants, and so "occupied" by the families of such other parties as residences, the square, distinct question is made, under § 9 of art. 15 of the constitution, is this property so occupied by the families of other persons, and not by the family of the owner, exempted from forced sale under any process of law? We have been unable to find any constitutional exemption exactly like ours, and "the decisions in other states can have but little application in this state." (5 Kas. 246.) And this question must be decided without aid from other courts, and upon the language of our own organic law. What then is exempted, as applicable to this case? "One acre within the limits of an incorporated city * * * occupied as a residence * * * by the family of the owner." Does this language exempt property which is not occupied by the family of the owner? Does it mean that a person may own a whole block of palatial structures, rented for residences, business houses, theaters, or churches, and because he may also occupy one building in such block as a residence that all this property

shall be exempt because he occupies part of the acre, and the balance constitute "all the improvements on the same?" Surely, such could not have been the intention of the framers of the constitution; and such meaning cannot fairly be deduced from the language used. Does the having a pathway through part of the acre, to reach the street, or leaving a few old traps in the other buildings, while they were occupied by other parties as residences, constitute an "occupation as a residence by the family of the owner?" Surely not. If one has a residence, and it is occupied by his family, he and his family certainly have a legal right to enter therein, to abide therein, to stay there, to live there. Now during all these years that the buildings levied on were rented and occupied by tenants, did Ashton and his family have the legal right to enter these houses — to abide there — to stay there — to live there? This must be answered in the negative. Ashton's family did not "occupy" these houses as a residence; they had no legal right to enter therein, to abide or remain there.

2. But if it were possible to be in error regarding the words of the constitution, the plaintiff comes "not with clean hands" to ask the equitable powers of the court in his behalf. The testimony shows that the money loaned by Mrs. Ingle went into the business of Ashton & Co., and into the building of his homestead by Ashton. It also shows Ashton's remarkably thin efforts to show this property to have been occupied as "a residence by his family" by planting "a row of cabbage!" "cutting hay" in a meadow six feet long! and hanging clothes on a line stretched to the rented premises! Such small dealings on the part of Ashton — such an evident intention to cheat Mrs. Ingle out of her money — such an effort to thwart the purposes of the exemption law — such littleness, meanness, and duplicity on his part, will hardly commend him to the charitable interference of a court of equity.

The opinion of the court was delivered by

VALENTINE, J.: Ruth A. Ingle recovered a judgment in the district court of Leavenworth county against John Ashton

and Joseph Ashton for the sum of $776.96. An execution

Statement of
the case. was issued on this judgment, and placed in the hands of Percival G. Lowe, sheriff of said county. Lowe by virtue thereof levied upon certain real estate situated in said county, as the property of said John Ashton, and advertised the same for sale. Ashton then commenced this action against said Ingle and Lowe to restrain them from selling said property, and to set aside the levy of said execution. Trial was had in the court below, before the court alone, which trial resulted in a finding and judgment in favor of the defendants and against the plaintiff; and the plaintiff now seeks to have said finding and judgment reversed by this court.

The plaintiff claims that said property is a part of his homestead, and therefore that it is and was exempt from said judgment, execution, and levy. This is the only question in this case. Before proceeding however to discuss this question, we would say, that, as the finding of the court below was general, and in favor of the defendants, we must presume that everything necessary to be found in the case was found in favor of the defendants, and against the plaintiff Ashton. And also, where there was conflicting evidence we must presume that the court below believed that which was most favorable to the defendants, and disbelieved that which contradicted it; and we must view the evidence in the same manner that the court below did. As to the *status* of the property, we must consider what such status was at the time when said judgment was rendered upon which said execution was issued, and not merely what it was at the time when said levy was made, or at the time when this suit was commenced, or trial

Judgment
liens. had. For if the property was not a part of Ashton's homestead at the time when said judgment was rendered, then the judgment became a lien upon the property; (Gen. Stat. 708, § 419; *Kirkwood v. Koester*, 11 Kas. 471,) and no subsequent homestead right or interest acquired by Ashton would defeat the judgment-lien. The judgment-lien in such a case would be paramount, and the

homestead right or interest would be subordinate and inferior thereto. *Bullene v. Hiatt,* 12 Kas. 98; *Robinson v. Wilson,* 15 Kas. 595; *Hiatt v. Bullene,* ante, p. 557. And under and by virtue of such judgment-lien the property may be levied upon and sold under an execution issued on such judgment, although at the time of the levy and sale the property may be occupied as a homestead of the owners.

Said judgment was rendered on the 22d of January 1877. At that time the plaintiff Ashton owned a certain L-shaped piece of ground situated in Leavenworth city. This ground was all fenced in one inclosure, and there was less than one acre in the piece. One branch of the L fronted west on Broadway street, and the other branch fronted north on Oak street, and within the inner angle formed by the two branches of this L, one Helmer owned and occupied a piece of land. Helmer's land also fronted on both Broadway and Oak streets, the two streets crossing each other at right angles at the northwest corner thereof. Lowe levied upon only a portion of that branch of said L which fronted north, on Oak street; and that which he levied upon is the only land now in controversy — and for convenience, we will call it one parcel of land, the north parcel; and the portion of the L which he did not levy upon as another parcel of land, the south parcel. On the south parcel, Ashton had a large, fine, brick dwelling-house, which he, with his family, occupied as a residence. On this same parcel he also had a cistern, an outhouse, a barn, a hog-pen, a hen house, a wood yard, and proper walks. On the north parcel there were two small houses, and a cistern, and proper walks. These two small houses, with the grounds around them, were rented by Ashton to tenants, for a money rent; and up to the time when the judgment upon which said execution was issued was rendered, the tenants who for the time being occupied said houses and grounds had exclusive use thereof, except as follows: A clothes line was stretched from one of the small houses across the north parcel onto the south parcel, and was used jointly by all the occupants of both

<span style="font-variant:small-caps">Statement of facts.</span>

parcels of land. A walk also extended from the south parcel across the north parcel to Oak street, which walk was used by the tenants of both houses, and sometimes by the Ashtons. The cistern on the north parcel of land was used by the tenants of both houses all the time, and by the Ashtons "occasionally, when the other cistern gave out."

After said judgment was rendered, Ashton, for the purpose of making said north parcel of land a part of his homestead, and for the purpose of defeating any levy of any execution which might be made upon said north parcel, assumed, at least nominally, greater control over the same, and over the houses thereon, than he had formerly done. In the written leases which were afterward executed he rented only certain rooms of the houses, and reserved to himself the rest of the houses, and the control of the grounds around them. Though in fact, and notwithstanding said written leases, he still allowed the tenants to occupy and use all of the two houses, and all the grounds around them, except the basement of one of the houses. But, as we have before stated, the question, so far as this case is concerned, is not governed by what transpired *after* said judgment was rendered, but it is governed by what transpired before and what existed at the time the judgment was rendered. The question is, not whether said north parcel has *become* a part of Ashton's homestead since said judgment was rendered, but it is, whether *it was* a part of his homestead at the time when such judgment was rendered. At the time said judgment was rendered only one of said houses was actually rented, or occupied, and the other was vacant; but the vacant house had been occupied by a renter up to only a short time previously, and was then kept by Ashton merely to be rented, and was shortly afterward rented. And the first time it was rented afterward, it was rented orally, and in the same manner that it had previously been rented. It was therefore, so far as any question in this case is concerned, substantially in the same condition as though it had been actually rented and occupied by a tenant at the time such judgment was rendered.

· Now, was the said north parcel of land, with the two small houses and the cistern, or any part thereof, a portion of Ashton's homestead, so as to be exempt from said judgment, execution, and levy, under the provisions of the homestead exemption laws? We think not. The homestead· exemption law, so far as it applies to this case, reads as follows:

*Homestead ex-emption laws construed.*

"A homestead, to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, [without regard to value,] occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale," etc.

Now the property, in order to be exempt must be "*a homestead,*" or a part of a homestead, and it must be "*occupied* as a *residence* by the *family* of the owner." Now the two *small* houses were not a part of Ashton's homestead in fact, whatever they might be *constructively.* And they were not "*occupied*" at all by Ashton's family, either as a "*residence,*" or otherwise. Mr. Justice Bradley, of the supreme court of the United States, in commenting upon the homestead exemption provision in the constitution of Florida, uses the following language: "In the case of a farmer, therefore, it is clear that the exemption embraces his house and farm, not exceeding the amount limited, (160 acres, without regard to value.) Of course, it includes (and so the constitution declares) the improvements thereon. Those improvements, however, must be such as to· make them properly a part of the homestead, such as outhouses, barns, sheds, wagon-houses, fences, etc. *They would not embrace tenant houses,* though built on the farm, for these would be no proper part of the farm homestead. They constitute capital separately invested. They produce a revenue of their own, distinct from that of the farm. For the same reason, the farmer's homestead would not include a saw-mill, or a grist-mill, or a carding-and-fulling mill, though erected on a portion of the tract of which the farm is a part. These are separate enterprises, in which the farmer has been enabled

*Authorities cited.*

to invest his surplus capital. They are no part of the farm. If he runs them, he does it as a separate business from that of his farm, and he cannot claim both as appurtenant to and part of his homestead. They constitute the basis of outside and separate industries." *Greeley v. Scott*, 2 Wood's Rep. 657, 659. The foregoing views of Mr. Justice Bradley are fully sustained by the following cases: *Casselman v. Packard*, 16 Wis. 114; *Kurz v. Bursch*, 13 Iowa, 371; *Rhodes v. McCormick*, 4 Iowa, 368; *Hoit v. Webb*, 36 N. H. 158; *Dyson v. Shelley*, 11 Mich. 527; *Gregg v. Bostwick*, 33 Cal. 220; *Iken v. Olenick*, 42 Texas, 195. (But on the other side of the question see the following cases: *Hancock v. Morgan*, 17 Texas, 582; *Nolan v. Reed*, 38 Texas, 525; *Hubbell v. Canady*, 58 Ill. 425; *Kelly v. Baker*, 10 Minn. 154; *Clark v. Shannon*, 1 Nevada, 568.)

Mr. Thompson, in his valuable work on Homesteads and Exemptions, section 130, uses the following language: "This last case, (that of *Gregg v. Bostwick*, supra,) very clearly conducts us to the rule, that houses built for the purpose of being rented to tenants, thus yielding to the debtor a revenue separate from any use immediately connected with his dwelling, form no part of his homestead. This rule, at once so reasonable and easy of application, has been agreed upon by several courts, (here citing cases from California, Michigan, Wisconsin, Iowa, and New Hampshire.) It has been denied in Texas, (here citing 38 Texas, 425,) but, as we have seen, in pursuance of a view of the constitution of that state, which had been since substantially overruled, (here citing sec. 127 of his work, and 42 Texas, 105, 201;) and in Illinois, where a dwelling and a store-house occupied by a tenant stood upon one lot, the whole within the statutory limit of value, the store-house was held a part of the homestead—a view which must be deemed salutary, under a statute limiting the value of the homestead to $5,000," (here citing 58 Ill. 425.) See also sec. 120 of Mr. Thompson's work, and cases there cited.

In the case of *Casselman v. Packard*, supra, Judge Cole

uses the following language: "We cannot believe the legislature ever intended that a person should hold all the buildings which might be erected upon a quarter of an acre of ground in a city or village, whatever might be their character, or for whatever purposes they were designed, under the homestead exemption law, merely because he might live in one of them. Such a construction seems to us most unreasonable. The statute exempts the given quantity of land, with the dwelling-house thereon, and its appurtenances. Of course, the exemption of that quantity of land has regard *to the purposes for which it is used.*" 16 Wis. 120.

In the case of *Kurz v. Bursch,* supra, Judge Wright uses the following language: "It was never intended that other buildings, though on the same lot, buildings not appurtenant to the homestead as such, those not used and occupied by the owner in the prosecution of his own ordinary business, *those rented and yielding a revenue to their owner* — we say it was never intended that such should be exempt. If so, the law could be made to cloak the most stupendous frauds. For if one such building may be exempt, so may all that could be placed upon a half-acre, if in a town, or forty acres, if in the country, without limit as to value. And thus the statute, instead of securing to the family a home, where they may be sheltered, and live beyond the reach of financial misfortune and the demands of creditors, would give them property never contemplated by its letter or spirit." 13 Iowa, 374, 375.

In Kansas there is no homestead exemption law as against taxes, or purchase-money, or claims for improvements, or liens given by the consent of the owner and wife, or owner and husband, as the case may be, or liens existing against the property prior to its occupancy as a homestead; but as to every other debt or claim there is a liberal homestead exemption law. Under it the owner of real estate may hold the same exempt from all process, (except that for the collection of taxes, purchase-money, claims for improvements, and to enforce voluntary

Homestead exemption laws, in Kansas.

and preëxisting liens,) subject to no limitations, except as to its *extent* as a homestead, and its *use and occupation* as such. As to its *extent* as a homestead, the owner may hold 160 acres of farming land, or one acre within the limits of an incorporated town or city, without regard to value. It may be covered with costly buildings, with palatial residences worth hundreds of thousands of dollars, and yet all be held exempt from process, provided it can all be called the *homestead* of the owner. As *to use and occupation*, it must be used as the homestead of the owner, and must be occupied by his family as a residence, or it will not be exempt. Any portion of his real estate not so used and so occupied will not be exempt, whatever may be the extent or value of such real estate, great or small. But the law however does not use the words "homestead," and "occupied," and "residence," in any narrow or limited sense. The word "homestead," does not include merely the dwelling-house, but it also embraces everything connected therewith which may be used and is used for the more perfect enjoyment of the home, such as outhouses for servants, for stock, or property, gardens, yards, and farming land to the extent of 160 acres, or land within the limits of an incorporated town or city to the extent of one acre. The word "occupied," does not always require an actual occupancy, but it may sometimes permit a constructive occupancy. The word "residence," like the word "homestead," is not confined merely to the dwelling-house, but it may also include everything connected therewith used to make the home more comfortable and enjoyable. But the words "homestead" and "residence," cannot be

Tenant houses, rented by owner.

intended to include some other and independent family's home and residence. Where houses and lots are rented, for a money rent, to tenants, who are not servants or employés of the owner, with the intention that such houses and lots shall become the homes and residences of such tenants and their families, and they actually do become the homes and residences of such tenants and their families, the owner certainly cannot then claim that such houses and

lots are a part of his own home and residence, although they may adjoin the same. In order that anything shall be a part of the homestead, it must not only be connected therewith as one piece of land is connected with another to which it adjoins, but it must also be used in connection therewith and as a part thereof. In legal phrase, it must be appurtenant thereto. Any other view than this would allow an owner of real estate in a city to own hundreds of thousands of dollars worth of property exempt from his just and legal debts. He could cover his acre of ground with costly buildings, rent a portion thereof to various families for residences, rent other portions for business purposes, other portions for manufacturing purposes, and others still for offices, and reserve merely one, two, three, or four rooms for his own use as a residence, and then hold all these buildings, and the acre of ground, exempt from his just debts. The framers of the constitution and of the exemption laws certainly never contemplated any such result from their labors.

The judgment of the court below must be affirmed.

All the Justices concurring.