On August 26, 1931, T.T. Teiten died leaving a widow, Anna Teiten and a daughter, Shirley Anne Teiten, five years old. During the course of the administration of the estate, a petition was made to have lots ten (10), eleven (11) and twelve (12) of block seven (7) of the town of Wildrose, Williams county, North Dakota set aside to the widow as a homestead. The defendant, Van Sickle, as district manager of L.R. Baird, Receiver, filed an answer to the petition, admitting the right to have two of the lots, namely: Lots eleven (11) and twelve (12) set aside as the homestead, but he resisted the right of homestead to lot ten (10).
It is agreed that the records of the county court show that Teiten, at the time of his death, resided with his family on lots ten (10), eleven (11) and twelve (12) of block seven (7) in said town of Wildrose, Williams county, North Dakota. That said lots ten (10), eleven (11) and twelve (12) are less than two acres in area and the property, with all the buildings, is valued at $2,950.
On lot eleven (11) there is located a two story frame building, 60 feet long and 25 feet wide, with a shed frame annex attached thereto at the east end of the building, 20 feet long and 12 feet wide. The first story or floor of said building at the time of the death of said T.T. Teiten and for some years prior thereto was occupied by a tenant who conducted a general retail merchandise business therein. The *Page 731 
second story of said building, located on lot eleven (11) was used and occupied as a dwelling by Teiten and his family at the time of his death and for several years prior thereto and is still being occupied by his widow and minor daughter.
Teiten conducted an undertaking business in a one story building 16 x 16, with a garage in connection on lot twelve (12) of said block seven (7).
On lot ten (10) of said block seven (7) there is a one story building 25 x 48 feet with a shed annex to the east end and attached to the main building on lot eleven (11), one wall of this building is on lot eleven (11) and there is a door in the wall. At the time of Teiten's death this building on lot ten (10) was occupied by one Henry Newhouse as a tenant, who conducted a general retail hardware business therein.
The county judge granted the petition and set aside the entire tract as a homestead and on appeal to the district court the judgment was reversed and judgment was duly entered holding that lot ten (10) was not a part of the homestead. From this judgment the petitioner appeals.
There is but one question involved, namely: is the petitioner entitled to a homestead right in lot ten (10) in said block seven (7)? It is conceded that the homestead right applies to lots eleven (11) and twelve (12) but it is claimed that it does not apply to lot ten (10) for the reason that lot ten (10) and the building thereon was no part of the dwelling and was not appurtenant thereto; that the whole tract claimed as a homestead must be occupied and used as a dwelling including appurtenances necessary to the dwelling.
The homestead law is purely statutory and there are so many different statutes in the different states that the decisions of the courts relating to homestead laws are of very little help.
Section 208 of the Constitution provides: "The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law." This provision in the Constitution requires: first, a law exempting from forced sale to all heads of families a homestead; second, legislation limiting and defining the value of the homestead. The limitations as to value are left entirely to the discretion of the legislature. *Page 732 
The homestead laws of the state, as they existed at the time of the decision, are well considered in the case of Calmer v. Calmer, 15 N.D. 120, 106 N.W. 684. In this case the homestead was on a lot in the city of Fargo, less than two acres in area, upon which there was a two-story brick building; the upper story was used as the family dwelling, and the lower story used as a store. The property was worth $7,000, was mortgaged for about $2,800 and could not be divided without material injury. The respondent contended that the entire premises were unconditionally exempt to her as a homestead, and for the purpose of determining the value of the property claimed as a homestead the amount of existing incumbrances thereon should be deducted from the value of the land and buildings thereon and when so deducted the homestead would not exceed $5,000 in value, that being the limited value fixed by statute at the time. On the other hand it was claimed that the widow had no homestead estate in the premises.
The court in this decision points out that "(prior to 1891 the homestead was limited as to area), but not as to value. The revision and amendment of 1891 was therefore necessary, and evidently the main reason for that enactment was to comply with the constitutional mandate to fix a limit of value on the homestead exemption. Section 3605 (Revised Codes of 1895) must therefore be construed, not as an attempt to define the meaning of the word homestead, but as an act recognizing the right to a homestead exemption and fixing the amount in area and value of the homestead property which could be held exempt. That such is the meaning of the section is clear from those subsequent sections of the same act which prescribe the procedure to be followed in order to ascertain and set off to the debtor's family the homestead exemption, or its equivalent in case the homestead property exceeds the statutory limits in value or area."
In other words the statute is intended to fix and does fix a limit to the homestead in area and in value. Continuing the court said: "As to area, the property is within the prescribed limit and the question is, whether it exceeds the limit as to value. The respondent contends, and the county and district courts held, that in determining the value for the purpose of ascertaining the extent of the exemption right the amount of the incumbrances should be deducted from the value of the land with the buildings and improvements thereon. Acting on this *Page 733 
theory the entire premises were unconditionally set off to the respondent as her homestead, because, after deducting the amount of existing incumbrances, the value of the homestead was less than $5,000.00. . . . We think that view is erroneous. A mortgage or other lien upon the property does not diminish the value either of the property itself or of the homestead claimant's estate therein. . . . The language of the statute does not permit such a construction. The statute exempts the land not exceeding a specified area and value, if it constitutes a homestead. In a controversy as to the value between the homestead claimant and an execution creditor, the appraisers are directed . . . `to view the premises and appraise the value thereof.'" It was accordingly held that the judgment and decree should be modified so as to show, as required by statute, that the homestead exceeds the statutory limit to the extent of $2,000 and that the homestead cannot be divided without material injury.
This is a construction of the first legislative enactment after the adoption of the Constitution, as amended by § 3605 of the Revised Codes of 1895, relating to homesteads and holding that the act must be construed, not as an attempt to define the word homestead, but as an act recognizing the right to a homestead exemption and fixing the amount in area and the value of thehomestead property which would be held exempt. In other words the homestead, at that time within a town plat was limited to two acres in area and $5,000 in value.
In 1923 the legislature again amended the homestead law by adding a provision permitting the deduction of all liens and incumbrances for the purpose of determining the value of the homestead, which value was left at $5,000. Chapter 229 of the Session Laws of 1923.
The last amendment was in 1925, Chapter 146, of the Session Laws of 1925 and that part of the law which applies to homesteads within a town plat reads as follows: "The homestead of every head of a family residing in this state, and consisting of not to exceed two acres of land and the improvements thereon, if within a town plat, and not exceeding in value Eight Thousand Dollars, over and above liens and encumbrances, or both, claimed under subdivisions 1, 2 and 3 of § 5607, . . . shall be exempt, etc." This law leaves the area of the homestead *Page 734 
unchanged but adds and exempts all the improvements thereon and increases the value to $8,000.
The Constitution and the statute of Kansas provides that a homestead to the extent of 160 acres of farming land or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner together with all the improvements on the same shall be exempt, etc. This does not limit the value of the homestead. The reasons given for limiting the improvements on a homestead to those which are appurtenant thereto, in the case of Ashton v. Ingle, 20 Kan. 670, 27 Am. Rep. 197, relied upon by respondent, are that "any other view than this would allow the owner of real estate in a city to own hundreds of thousands of dollars' worth of property exempt from his just and legal debts. He could cover his acre of ground with costly buildings, rent a portion thereof to various families for residences, rent other portions for business purposes, other portions for manufacturing purposes, and still others for offices, and reserve merely one, two, three or four rooms for his own use as a residence, and then hold all these buildings, and the acre of ground, as exempt from his just debts." Citing Casselman v. Packard, 16 Wis. 115, 82 Am. Dec. 710. The Wisconsin statute does not limit the value of a homestead. Also Kurz v. Brusch, 13 Iowa, 371, 81 Am. Dec. 435. The Iowa statute does not limit the value of the homestead and does specifically provide that it must not embrace more than one dwelling house nor any other buildings, except such as are properly appurtenant to the homestead, such being a shop and other buildings situated thereon and really used and occupied by the owner in the prosecution of his ordinary business and not exceeding $300 in value may be deemed appurtenant to such homestead. Also citing Gregg v. Bostwick, 33 Cal. 220, 91 Am. Dec. 637. The California statute does not limit the value of the homestead. It simply provides that the homestead shall consist of the dwelling house in which the claimant resides and the land on which the same is situated. The Minnesota statute does not fix the value of the homestead, but in Kelly v. Baker, 10 Minn. 154, Gil. 124, it is held that the statute does not limit the use which should be made of the homestead, provided only it was the dwelling place of the party claiming the exemption.
Under the statutes in Illinois "every householder having a family, *Page 735 
shall be entitled to an estate of homestead, to the extent in value of $1,000, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence." The farm or the lot is limited to one farm or one lot to the extent of $1,000. The value of the homestead in Illinois is $1,000. In the case of Hubbell v. Canady, 58 Ill. 425, the lot claimed as a homestead was 60x120 feet. The dwelling house of the debtor was mostly on the east half of the lot, about four feet of it, and seven feet of the smoke house were on the west half, as was the garden, fruit trees and well. There was a storehouse, 20x45 feet on the west half which set back six or eight feet from it and it was in the occupancy of a tenant. The whole did not exceed $1,000. The court said "The whole lot of ground is covered by the exemption, not some part of it, and the lot included all the buildings upon it. We are not to regard the intention of the legislature as being only to save a mere shelter for the debtor and his family, but that it was the purpose to give him the full enjoyment of the whole lot of ground exempted, to be used in whatever way he might think best for the occupancy and support of his family, whether in the way of cultivating it, or by the erection and use of buildings upon it, either for the carrying on of his own business, or for deriving an income in the way of rent. We can not accede to the narrow construction of the statute which would take away this storehouse, as not a part of the homestead." The homestead is measured by its value. Eldrige v. Pierce, 90 Ill. 474; Browning v. Harris, 99 Ill. 456; Roberson v. Tippie,209 Ill. 38, 70 N.E. 584, 101 Am. St. Rep. 217.
The statute of Nevada provides a homestead consisting of a quantity of land together with the dwelling thereon and its appurtenances not exceeding in value the sum of $5,000. There is no limit as to the number of acres or the size of a lot, but the value must not exceed $5,000. In the case of Clark v. Shannon,1 Nev. 568. Shannon was residing on lot number four in a certain block. On lot number three in the same block and immediately joining he had a livery stable. Each lot was 50x100 feet, the two together making a square of 100 feet. There was less than a quarter of an acre in the two lots. They were only divided by an imaginary line. "There could be but two objections suggested to his claim of the two lots — one, that they do *Page 736 
not compose one tract of land, because one-half of the land is called lot 4, and the other lot 3; the other, that a distinct portion of the land is devoted to business purposes. But as the line between them is merely imaginary, we think this renders the first position untenable. No one would say that a man might not claim a homestead in a quarter section of land because it was divided by imaginary lines into forty-acre tracts. We think there is no more force in the other objection that a distinct portion of the property was devoted to business purposes. The only limitation of the right to select the homestead land is that they shall not exceed five thousand dollars in value. We do not think it was the policy of the law to preserve only a residence for the family of the insolvent debtor, but to secure also the means of making a living. To give an insolvent debtor a fine house to live in without any means to support his family, would be an injury to his creditors without a corresponding benefit to the debtor. But to protect him in the enjoyment of a cheap and modest house for his family, together with such adjacent lands or business houses as will enable him to decently support his family, would be a wise and humane policy. We think such was the intention of the law." To the same effect is Noland v. Reed, 38 Tex. 425.
In all the cases relied on by respondent the value of the homestead was not fixed or limited by law and Thompson on Homesteads, Section 128, in reference to the Kansas case says: "The court were, no doubt, impelled to this conclusion by a consideration of the great amount of property which might, in the form of a town homestead, be withdrawn from creditors under the operation of a different rule." The reasoning, of course, does not apply to a statute which limits the value of the homestead, as does the statute of North Dakota.
But the Kansas court, in a later case very much like the instant case, viz.: Layson v. Grange, 48 Kan. 440, 29 P. 585 said: "Thomas A. Grange owned three lots, adjoining each other, on Lime Street, in the city of Topeka. The tract contained less than one acre. He resided on these lots with his family, in a house located upon the north subdivision. . . . Upon the south lot the defendant in error had a building which he had used for several years as a carpenter shop. Having met with an accident, which incapacitated him from working at his trade as a carpenter, he procured some lumber, and raised the roof of *Page 737 
the shop and converted it into a story and a half house, containing four rooms, which he rented to a family for $10 per month, reserving the basement, in which he manufactured hominy during the winter season. . . . It seems to be conceded that the three lots would have been exempt so long as the carpenter shop was used as such by the defendant in error. Did the remodeling of the building and the renting of it change the homestead right? It must be observed that under the findings of the trial court the claimant of the homestead right reserved the land, and only leased the four rooms. He still retained all of the ground and use of the basement. It was the same as if he had rented rooms in his house to a family, except that the building rented was detached from the house actually occupied by the debtor and his family. It has been decided by this court that the homestead character is not destroyed where a part of the building is leased to another for a purpose not inconsistent with the homestead right. We think the principle is the same where the rooms rented are in a detached building, upon exempt property."
So in the instant case it was only the room in the building on lot ten (10) that was leased to Newhouse and in the instant case the buildings were not detached, as in the Kansas case.
The law does not say what kind of a home or what kind of buildings shall be built upon the homestead premises. It refers to the homestead as consisting of not to exceed two acres of land and the improvements thereon, if within a town plat, and not exceeding in value $8,000. These are the only limitations in the law and the only limitations considered in the Calmer case.
In the statement of facts, in his brief, counsel for respondent states that from the testimony adduced it appears that lot eleven (11) has a frame two story building erected thereon and that the lower part thereof is used as a store building by a tenant; that sometime after the erection of the frame building on lot eleven (11), a one story brick building was erected on lot ten (10) and that in the erection of the said building on lot ten (10) aforesaid, it was built on to the frame building on lot eleven (11) and that the wall of the building on lot eleven (11) was used as one of the walls of the brick building built on lot ten (10) and that the buildings were fastened together and that the roof of the building situated on lot ten (10) is built into and fastened *Page 738 
onto the side of the building on lot eleven (11). It also appears that there is a doorway between the wall connecting the lower floor of the two buildings and that the doorway has a sliding door.
Thus it appears that all of the buildings on the three lots are a part of one establishment. There is no claim that lot ten (10) is leased to Henry Newhouse. He does not live on lot ten (10), it is not his home, he only has the use of the building on lot ten (10).
Since it is conceded that the property claimed is less than two acres, that the lots are contiguous within the curtilage and less in value than $8,000, it follows that the petitioner is entitled to her homestead right in the entire tract of land and the judgment is reversed and it is ordered that judgment be entered reversing the judgment of the district court and affirming the judgment of the county court.
NUESSLE, Ch. J., and BIRDZELL, BURR and CHRISTIANSON, JJ., concur.