## TRUMAN ELDRIDGE

*v.*

## CLEMENT PIERCE *et al.*

1. PLEADING—*as to homestead right.* Where a complainant, seeking to foreclose a mortgage, in his bill alleges that the premises, at the time of the execution of the mortgage, were occupied by the mortgagor and his wife and family as a homestead, and seeks to avoid the right by charging a subsequent abandonment of the premises after the execution of a second mortgage, he can not be allowed to urge that the answer of the second mortgagee does not set up such facts as to clearly show the existence of the mortgagor's right of homestead. The second mortgagee may act on such admission in the bill, and controvert the question of abandonment and its effect on the rights of the parties.

2. Where the complainant undertakes to anticipate a defense by alleging a state of facts designed to show its invalidity, he will relieve his adversary from specifically setting up his defense, and authorize him to accept the issue presented and limit his allegations and proofs to that issue.

3. HOMESTEAD—*nature of the right.* The statutes relating to homesteads in force prior to July 1, 1873, created no new estate, but simply an exemption, and when the holder of the homestead conveyed without relinquishing the exemption, he transferred the fee, but the operation of the deed was suspended until the premises were abandoned, or possession surrendered,—and such exemption did not affect the rights of heirs or devisees.

4. By the statute which took effect July 1, 1873, an estate of homestead is created—an estate before unknown to the law. This new estate is limited only as to its value, being $1000, and not by any specific degree of interest or character of title in the particular property to which it attaches. If the prop-

erty does not exceed $1000 in value, the estate embraces the entire title and interest of the householder therein, leaving no separate interest in him to which liens can attach, or which he can alien distinct from the estate of homestead. If it exceeds this sum in value, the excess is liable to the same liens, and may be aliened in the same manner as his other real property.

5. SAME—*householder may alien his estate of homestead free from claim of creditors.* A householder having an estate of homestead, may alien the property in which it exists, to the extent of $1000, without regard to his creditors, provided it is done in accordance with the requirements of the statute; and the surrender of possession to the grantee, in such case, is not an abandonment of the homestead so as to subject it to the claims of creditors or prior grantees under conveyances which fail to pass the estate.

6. SAME—*abandonment does not pass the estate, but only extinguishes it.* The estate of homestead is upon condition that the homestead shall not be voluntarily surrendered or abandoned, and is extinguished by a failure of the condition. The abandonment, whether pursuant to an insufficient conveyance or without any conveyance, does not pass the estate of homestead, but extinguishes it, leaving the property thereafter to be dealt with as other property.

7. SAME—*act embraces mortgages and deeds of trust.* Mortgages and deeds of trust, being conveyances upon condition, are clearly within both the letter and spirit of the act relating to homesteads, and must be executed and acknowledged in accordance with the requirements of the laws respecting the alienation of homesteads.

8. Where a householder, occupying premises with his wife and family, as a homestead, executed a mortgage thereon, which was insufficient to waive or release the homestead estate therein, and afterwards he and his wife executed two other mortgages in accordance with the statute, and then surrendered possession under the two last mortgages, it was *held*, that the last mortgages were entitled to priority over the first to the extent of $1000.

9. STATUTE—*exclusion by implication.* Where a statute creating a right makes certain express exceptions, it, by necessary implication, excludes any other exceptions.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Bill was filed by Clement L. Pierce and John L. Woodmansee, in the court below, against Truman Eldridge and others, praying for the foreclosure of a mortgage. It is alleged that the mortgage was executed by Joseph Woods, on the 8th of September, 1873, to Pliny F. Axtel, on lot 2, in block 9, and the north one-fifth of lot 3, in block 9, in the

town of Roseville, in Warren county, to secure the payment of two promissory notes of the same date, given by Woods to Axtel, each for the sum of $100, one payable in one year and the other in two years from date, and bearing interest at the rate of ten per cent per annum; that the notes and mortgage have been duly assigned and transferred to the complainants for a valuable consideration, and that the notes remain unpaid.

It is further alleged, that before the making of the mortgage, and on the — day of ——, 1873, Truman Eldridge, and Alina Eldridge, his wife, being then seized in fee of the property described in the mortgage, conveyed the same, by deed properly acknowledged, to Joseph Woods, in fee simple; that this deed was never recorded, and is lost, but that, at the time of the execution of the mortgage, Joseph Woods had in his possession the said deed, and he and his wife were residing upon said premises; that on 8th of October, 1874, said Truman Eldridge, for the alleged consideration of $240, conveyed said property in fee to Isabel L. Woods, wife of said Joseph Woods; that on the same day, the said Isabel L. Woods, and her husband, Joseph Woods, mortgaged the same property back to Truman Eldridge, purporting thereby to secure the payment of five promissory notes signed by the said Isabel L. Woods and Joseph Woods, for the aggregate sum of $185.50; that on the 24th of February, 1875, the said Isabel L. Woods and Joseph Woods, by their mortgage deed of that date, mortgaged the same property to Truman Eldridge for the alleged purpose of securing the payment of six promissory notes of the said Isabel L. Woods and Joseph Woods, for the sum of $50 each. It is then charged that the conveyance from Eldridge to Isabel L. Woods, and the mortgages from Isabel L. Woods and Joseph Woods to Truman Eldridge, are fraudulent and void, so far as the rights of the complainants are concerned, and that the mortgage given to Axtel, and by him assigned to the complainants, is paramount.

Truman Eldridge answered the bill, admitting the execution of the deeds, mortgages, etc., as alleged in the bill, but deny-

ing that the mortgage of Woods to Axtel was valid, as to the homestead of Woods, because it was executed by Woods only, and, at that time, he was a married man and his wife did not join in the execution of the mortgage.   He admits that, at the time of the execution of the mortgage to Axtel, Woods and his wife were in possession of the premises, residing upon the same, by virtue of his deed to Woods.   He denies that the two mortgages executed by Isabel L. Woods, and Joseph Woods, her husband, to himself, are fraudulent and void as to the rights of the complainants, or subordinate to the rights of the complainants, but insists that they are paramount to their rights.   He charges that Joseph Woods, and Isabel L. Woods, his wife, were entitled to a homestead in the premises described in the bill under their original purchase of the same from the respondent, to the extent of $1000, for purposes either of occupation or sale, against all rights of complainants ; that said Isabel L. Woods, and Joseph Woods, her husband, mortgaged their homestead right in said property by the said two mortgages to himself, and that neither of the promissory notes secured by the mortgages has been paid, and that the said Isabel L. and Joseph Woods delivered to the respondent the possession of the premises in the bill described, and agreed with him that he should retain such possession until the payment of the notes secured by the two mortgages.

Afterwards, by leave of the court, complainants amended their bill by adding, in the 24th line of the second folio, after the word "appear," "that the said Joseph Woods, having a family, at the time of the execution of said mortgage, occupied said mortgaged premises with his wife, Isabel L. Woods, and his family, as a homestead, and continued to occupy the same as such until on or about the first day of March, 1875, at which time said Joseph Woods, together with his wife, Isabel L. Woods, and his family, permanently abandoned said premises, as such homestead, and removed to the State of Colorado, and has remained and continued to reside in said State ever since."

To this amendment Truman Eldridge answered, admitting the occupation of the premises as a homestead by Woods and family until about the first of March, 1875, but denying that they abandoned the premises, but alleging that Woods and wife, being unable to pay off their mortgages to respondent, surrendered to respondent possession of the premises and the homestead which they had therein, to be held and enjoyed by him until his claims were liquidated.

The cause was heard on bill, answer and proofs, and the court decreed a foreclosure of the Axtel mortgage, as prayed in the bill, subordinating the rights of Eldridge, under his mortgages, to those of the complainants under the Axtel mortgage.

Messrs. STEWART, PHELPS & GRIER, for the appellant.

Mr. J. M. KIRKPATRICK, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Preliminary to a consideration of the main question arising on this record, it is necessary to notice an objection urged by appellees' counsel, to the pleadings. It is insisted Eldridge does not, in his answer, set up such facts as clearly show that the Woods had a homestead right in the property covered by the mortgages, when the mortgage to Axtel was executed. Under the pleadings, this was not made a question on the trial below. Appellees, by their bill as amended, expressly allege that the property was occupied by "Joseph Woods, and his wife, Isabel L. Woods, and his family, as a homestead," when the mortgage to Axtel was executed, and thereafter until the first of March, 1875. Instead of presenting an issue whether the homestead right existed as against the rights of the mortgagee, it is, in general terms, admitted that such right did exist, and the bill seeks to avoid its effect by the allegation that on the first day of March, 1875, the Woods abandoned their homestead, and by the act of abandonment the property

became subject to the Axtel mortgage. The answer admits the existence of the homestead right, but puts in issue only the fact and effect of the abandonment alleged. Upon this issue the cause was submitted and evidence heard and the decree rendered.

It does not lie in the power of appellees to now abandon the issue they tendered, and urge that the facts alleged were not specific enough to present the issue. When they undertook to anticipate the defense by alleging a state of facts designed to show its invalidity, they relieved their adversaries from specifically setting up their defense, and authorized them to accept the issue presented, and limit their allegations and proofs to that issue. *Hall et al.* v. *Fullerton,* 69 Ill. 451; *Williams* v. *Rhodes et al.* 81 id. 571.

The mortgage to Axtel was executed by Joseph Woods, on the 8th of September, 1873. It was not signed or acknowledged by Isabel L. Woods, his wife, nor did it purport to convey the estate of homestead, nor did the certificate of acknowledgment purport that such estate was released or waived. The mortgages to appellant, Eldridge, were executed—the first on the 8th of October, 1874, and the second on the 24th of February, 1875, and both purport to convey all right of homestead, are signed by Joseph Woods and Isabel L. Woods, his wife, and in the certificates of acknowledgment there are proper clauses showing that the right of homestead is relinquished. The abandonment of the premises, alleged and proved, was not until the 1st of March, 1875,— some days after the execution of the last mortgage.

The question, therefore, is, are appellant's mortgages junior and subordinate to the Axtel mortgage in all respects, and without regard to the value of the property mortgaged, as decreed by the court below.

The statute in relation to homestead exemptions, in force prior to the act on that subject which took effect on the 1st of July, 1873, provided only that there should "be *exempt from levy and forced sale,*" etc., the lot of ground, etc., occu-

pied as a homestead, to the value of $1000, and that "no release or waiver of *such exemption*" should be valid, except in the mode therein prescribed. Gross' Statutes of 1869, p. 327. It was held that this did not create a new estate, but simply an *exemption;* and where the holder of the homestead conveyed without relinquishing the exemption, he transferred the fee, but the operation of the deed was suspended until the premises were abandoned or possession was surrendered. *McDonald* v. *Crandall,* 43 Ill. 231; *Coe et al.* v. *Smith,* 47 id. 225; *Hewitt* v. *Templeton,* 48 id. 367; *Hartwell et al.* v. *McDonald,* 69 id. 293. And, also, that the exemption did not affect the rights of heirs or devisees. *Turner* v. *Bennett,* 70 Ill. 263; *Eggleston* v. *Eggleston et al.* 72 id. 24; *Fight* v. *Holt,* 80 id. 84; *Sontag* v. *Schmisseur et al.* 76 id. 541.

The phraseology of the act in force July 1, 1873, leaves no room for doubt that the General Assembly designed to change the law in both these respects. To meet the objection that the former acts created no new estate, it expressly declares that "every householder," etc., shall be entitled to an *estate of homestead* to the extent in value of $1000,—thus creating a new estate; and, to meet the objection that the former exemption did not affect the rights of heirs and devisees, it declares that such homestead (*i. e.,* the estate of homestead to the extent in value of $1000,) shall not only be exempt from attachment, judgment, levy or execution, sale for the payment of debts, or other purposes, but that it shall also be exempt from the laws of conveyance, descent and devise, except as therein provided. Rev. Stat. 1874, p. 497, § 1. So, also, in the fourth section, in providing the manner of release, waiver or conveyance, instead of following the language of the former acts, which use the word "*exemption,*" only, in describing the interest of the householder, the language is, "no release, waiver or conveyance of the *estate* shall be valid, unless," etc. And in the sixth section it is enacted: "When a homestead is conveyed by the owner thereof, such conveyance shall not subject the premises to any lien or incumbrance to which it

would not have been subject in the hands of such owner; and the proceeds thereof, to the extent of the amount of $1000, shall be exempt from execution or other process for one year after the receipt thereof by the person entitled to the exemption, and, if reinvested in a homestead, the same shall be entitled to the same exemption as the original homestead."

It would be difficult to employ language more clearly expressing that the householder is now invested with an estate (one before unknown to the law) of homestead, to the extent in value of $1000, which can only be incumbered or aliened in the mode prescribed by the statute. Where the property in which this estate exists exceeds in value $1000, the excess is plainly unaffected by the estate—that is to say, the excess is liable to the same lien of judgment, attachment, etc., and to be aliened in the same manner that other real property of the householder is. Where, however, the property does not exceed in value $1000, the estate embraces the entire title and interest of the householder therein, leaving no separate interest in him to which liens can attach or which he can alien, distinct from the estate of homestead. To ascertain whether, in a given case, the householder has an interest in the property he occupies as a homestead, beyond and distinct from his estate of homestead, it is only necessary to keep in mind that the estate of homestead is limited by no specific degree of interest or character of title in the particular property, but is measured and defined entirely by the *value* of the interest and title which the householder actually has,—in other words, it is *value* and not quantity or *extent* of interest that controls. The $1000 in value belongs to the householder, free from all claims of creditors and others. He may, to the extent of that, alien the property in which the interest exists, without regard to his creditors, but can only do so by observing the requirements of the statute; and, whatever he may own of value in the property, beyond that amount, is liable to be sold by creditors and aliened by the householder, the same as any other property in which there is no claim on account of homestead.

31—90 Ill.

But counsel insists, that if a mortgage or deed, without a release or waiver of the estate of homestead, can not, in any manner, affect the title to the property purporting to be conveyed, it is impossible that title can be transferred by an abandonment of the premises; and yet he insists the statute expressly provides that it may be so transferred.

This position is assumed without due attention to the language of the statute. It is nowhere provided that mere abandonment shall have the effect of vesting the estate in the grantee of a prior insufficient deed. The estate is upon condition, and, of course, may be extinguished by the failure of the condition. The condition is, that the homestead shall not be voluntarily surrendered or abandoned. Voluntary abandonment, not pursuant to a conveyance, would extinguish the estate (not pass the title), leaving the property to be thereafter dealt with as other property; but abandoning or surrendering possession *pursuant to the conveyance* of the property, is not an abandonment of the estate of homestead, but is, by virtue of the statute, an appropriate mode of transferring that estate. In such case, the two acts—the execution of the conveyance and the abandoning or surrendering of possession pursuant to the conveyance—are, in legal contemplation, one transaction; and the conveyance becomes effective only from and after the abandoning or surrendering of possession pursuant to its terms.

It is sufficient that the language of the statute comprehends mortgages, without attempting to analyze the motives which may have controlled in the enactment of the statute. Whether this was wise or unwise, or entirely consistent with what we might conceive to be the general policy of the statute, could only be important upon the assumption that a reasonable construction leaves it doubtful whether the language employed is intended to include or exclude such instruments. No such doubt occurs to our minds. An exception as to the exemption is made in favor of sales for non-payment of taxes or assessments, and for a debt or liability incurred for the purchase or

improvement of the premises, thus, according to a familiar rule of construction, excluding, by necessary implication, any other exemption; and the language expressly excludes every other known mode of incumbering and conveying the property. A mortgage is defined to be "the conveyance of an estate, by way of pledge for the security of debt, and to become void on payment of it. The legal ownership is vested in the creditor, but in equity the mortgagor remains the actual owner, until he is debarred by his own default or by judicial decree." 4 Kent's Com. (8th ed.) 138; 1 Hilliard on Mort. 2, § 2. Mortgages and deeds of trust are clearly within both the letter and the spirit of the act.

There is no support in the evidence for a claim that possession of the premises was abandoned or surrendered pursuant to the Axtel mortgage. On the contrary, the evidence is specific and uncontradicted that it was abandoned and surrendered pursuant to the mortgages of appellant. It, hence, must follow, that as to the homestead estate,—*i. e.*, an estate in whatever title the Woods had in the property,—measured by $1000 in value, appellant's mortgages are entitled to priority.

The decree of the court below is reversed, and the cause remanded.

*Decree reversed.*