BUSHROD W. BARROWS *et al.*

*v.*

MARY A. BARROWS.

*Filed at Springfield November 2, 1891.*

1. DEED—*delivery.* Where a person, in anticipation of his marriage, executed and acknowledged a deed for a house and lot to his intended wife, and handed the same to his attorney, with instructions to deliver it to the grantee as soon as the marriage was solemnized, and two days after the marriage the attorney returned the deed to the grantor: *Held,* that this did not constitute a delivery of the deed to the grantee, and that the possession of the attorney was the possession of the grantor, who did not thereby part with all control over the deed.

2. SAME—*invalid as to homestead—effect of.* A conveyance of land occupied as a homestead, not executed as required by the statute, when there is no abandonment or delivery of possession, can have no effect upon the estate of homestead; and when the property is subject to such estate, and is not worth exceeding $1000, the conveyance is invalid, and passes no title. But when the property is worth more than $1000, the conveyance passes the title subject to the estate of homestead, or, rather, it passes the excess over the amount of the homestead right.

3. A conveyance of a homestead by a husband to his wife, worth less than $1000, without its release in the statutory mode, there being no abandonment or transfer of possession, is invalid to pass the title, the same as if the deed were to a stranger. If the homestead is of greater value than $1000, such deed will be operative as to such excess, only.

4. SAME—*husband to wife.* Under our present statute, a conveyance by a husband directly to his wife is valid, so as to vest in her all his title capable of being transferred by the instrument of conveyance. The validity and effect of such a conveyance must be viewed in the same light as if any other person not sustaining to the grantor the marital relation, was the grantee.

5. SAME—*unrecorded—when subsequent deed set aside.* Where a party accepts a deed subsequent to a prior unrecorded one, under such circumstances as show that he is not a *bona fide* purchaser, a court of equity, on proper bill filed by the prior grantee, will decree that the second grantee take nothing by his deed, though it may be first recorded, and may require him to release to such prior grantee all title to the premises, when it does not appear that he has any other title than that acquired by his deed.

6. In this case, facts and circumstances are stated showing that a subsequent grantee was not a *bona fide* purchaser as against a prior unrecorded deed, and which justified a cancellation of his deed as against the prior unrecorded deed.

7. PRACTICE IN SUPREME COURT—*weight given to findings of chancery court on oral testimony.* The findings of a court of equity upon controverted questions of fact are entitled to much the same weight and credit usually accorded to verdicts of juries in suits at law, especially when the evidence at the hearing is given orally in open court, and should not be disturbed unless clearly contrary to or unsupported by the evidence.

APPEAL from the Circuit Court of Brown county; the Hon. JOHN C. BAGBY, Judge, presiding.

Mr. W. L. VANDEVENTER, and Mr. A. K. LOWRY, for the appellants:

The premises being the homestead of B. W. Barrows and his wife at the time the deed was delivered to the wife, that instrument was void, for the reason she did not join in the same. *Kitterlin* v. *Insurance Co.* 134 Ill. 647; *Eldridge* v. *Pierce*, 90 id. 474; *Hartman* v. *Schultz*, 101 id. 437; *McMahill* v. *McMahill*, 105 id. 596; *Browning* v. *Harris*, 99 id. 456; *Gage* v. *Wheeler*, 129 id. 197.

If a deed to the homestead signed by the husband alone can legally operate as a conveyance of any title subject to the homestead, the burden of proof is on the grantee to prove such a state of case as passes the title. *Stevenson* v. *Marony*, 29 Ill. 533; *White* v. *Clark*, 36 id. 285.

The court erred in holding A. H. Barrows to be a *mala fide* purchaser. The court in a chancery case will examine all the evidence in the record, and not merely pass upon particular rulings of the lower court. *Flagg* v. *Stowe*, 85 Ill. 165; *Smith* v. *Long*, 106 id. 485; *Faulkner* v. *Gardner*, 10 Bradw, 309; *Treleaven* v. *Dixon*, 119 Ill. 548.

The wife living on the premises with her husband, has not such possession as affords notice of her rights to a subsequent purchaser. *Stanton* v. *Kirsch*, 6 Wis. 341.

The deed was and is good between B. W. Barrows and Arthur, and it should only be set aside, if at all, as to complainant. *Ward* v. *Enders,* 29 Ill. 519 ; *Rawson* v. *Fox,* 65 id. 202 ; *Upton* v. *Craig,* 57 id. 259 ; *Lyon* v. *Robbins,* 46 id. 276 ; *Harmon* v. *Harmon,* 63 id. 512.

Messrs. SPRIGG & ANDERSON, and Mr. JOHN J. McDANNOLD, for the appellee :

The deed from B. W. Barrows to his wife, the appellee, is a good and valid conveyance of the legal title to all interest in the premises above the homestead estate of $1000. The conveyance of the entire estate, including the $1000 homestead, by husband to wife, will be sustained in equity. *Kitterlin* v. *Insurance Co.* 134 Ill. 647.

In the following cases the courts hold that "a homestead can not be conveyed by deed executed by the husband alone, except in cases in which the grantee in such deed is the wife of the grantor :" *Harsh* v. *Griffin,* 72 Iowa, 608 ; *Burkett* v. *Burkett,* 78 Cal. 310 ; *Furrow* v. *Othey,* 21 Neb. 671 ; *Grupe* v. *Byers,* 73 Cal. 371.

As to delivery of the deed, see *Bryan* v. *Wash,* 2 Gilm. 557 ; *Stevens* v. *Castel,* 63 Mich. 111 ; *Masterson* v. *Cheek,* 23 Ill. 72 ; *Rivard* v. *Walker,* 39 id. 413 ; *Dale* v. *Lincoln,* 62 id. 22 ; *Rawson* v. *Fox,* 65 id. 200 ; *Gunnell* v. *Cockerill,* 79 id. 79 ; *Thatcher* v. *St. Andrew's Church,* 37 Mich. 265 ; *Benneson* v. *Aiken,* 102 Ill. 288 ; *Hulick* v. *Scovil,* 4 Gilm. 176 ; *Walker* v. *Walker,* 42 Ill. 311 ; *Stinson* v. *Anderson,* 96 id. 373 ; *Byars* v. *Spencer,* 101 id. 429.

A deed executed without knowledge of the grantee, and delivered to a third person for the grantee, the grantee having received the deed, the delivery took effect from the delivery to the third person. *Stone* v. *Duvall,* 77 Ill. 475 ; *Bryan* v. *Wash,* 2 Gilm. 557 ; *Hatch* v. *Hatch,* 9 Mass. 272. See, also, to same effect, *Wheelright* v. *Wheelright,* 2 Mass. 454 ; *Foster* v. *Mansfield,* 3 Metc. 412 ; *McPherson* v. *Featherstone,* 37 Wis.

632; *Mather* v. *Corliss*, 103 Mass. 568; *Hathaway* v. *Payne,* 34 N. Y. 92; *Stevens* v. *Rinehart*, 72 Pa. St. 434; *Wallace* v. *Harris*, 32 Mich. 380; *Brown* v. *Brown*, 1 W. & M. 330.

This position is not changed by the fact that after delivery to Lowry, Bushrod W. Barrows took the deed from Lowry and handed it to appellee. He did not receive it back to revoke it or modify it, but simply to hand it to appellee himself. In *Souverbye* v. *Arden*, 1 Johns. 240, the deed was first delivered to the mother of the grantee, but afterward came into the possession of the grantor, and the court says that the subsequent possession of the deed by the grantor "can not affect the operation of the deed, provided it was duly delivered in the first instance." See, also, *Adams* v. *Adams*, 21 Wall, 185; *Wall* v. *Wall*, 30 Miss. 97; *Squires* v. *Summers*, 85 Ind. 254; *Bogie* v. *Bogie*, 35 Wis. 666; *Porter* v. *Cole*, 4 Me. 25; *Blight* v. *Schenck*, 10 Pa. 285; *Welch* v. *Sackett,* 12 Wis. 243; *Regan* v. *Howe*, 121 Mass. 426; *Wallace* v. *Berdell*, 97 N. Y. 22.

Facts sufficient to put a purchaser on inquiry are good notice of whatever the inquiry would have disclosed. *Russell* v. *Ranson*, 76 Ill. 167; *Watt* v. *Scofield*, 76 id. 261.

The wife's possession was notice of her rights. *Brainard* v. *Hudson*, 103 Ill. 218; *Coari* v. *Olsen*, 91 id. 273; *Sanford* v. *Finkle*, 112 id. 146.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

In this case, Mary A. Barrows, who claims to be the owner in fee, by conveyance from Bushrod W. Barrows, her husband, of certain real estate, consisting of a dwelling house and lot situate in the city of Mt. Sterling, in Brown county, brought her suit in chancery against her said husband and Arthur H. Barrows, to set aside a subsequent conveyance of the same property by her said husband to said Arthur H. Barrows, and to restrain both defendants from further conveying or incumbering, said property. It appears from the pleadings and

proofs that, on the 10th day of July, 1889, Bushrod W. Barrows, a man then about seventy-eight years of age, being about to be married to the complainant, signed and acknowledged a deed conveying said house and lot to her in fee, with full covenants of warranty, and left said deed with his attorney to be delivered to the complainant immediately after the solemnization of the marriage. On said 10th day of July, and after said deed had been signed and acknowledged, Bushrod W. Barrows and the complainant were married, but for some reason said deed was not delivered to the complainant on that day. Two days afterward said attorney called at said dwelling house, where the complainant and her husband had established their residence on the day they were married and were then living, and handed an envelope containing said deed to the complainant's husband, and after the attorney had gone away, her husband handed said deed to her, saying that whatever might happen, the house and lot would be hers.

The evidence tends to show that said dwelling house had been erected by Bushrod W. Barrows in contemplation of his marriage with the complainant, and with a view of conveying it to her, and of making it the residence and homestead of himself and wife after their marriage, and it is admitted that they actually occupied it as their homestead from the day of their marriage until April 4, 1890, when, in consequence of some difficulties arising between them, the complainant left her husband and went elsewhere to reside. The complainant failed to place her deed on record until December 11, 1889.

In the meantime, on the 8th day of October, 1889, the complainant's husband, without her knowledge, executed a deed, in which of course she did not join, which purported, for an expressed consideration of $3000, to convey said dwelling house and lot in fee, with full covenants of warranty, to said Arthur H. Barrows, who was the grantor's son by a former marriage. Said deed was recorded November 14, 1889, and prior to the record of the deed to the complainant. The complainant does,

not seem to have become aware of the execution of the deed to Arthur H. Barrows until the time, or shortly after, she ceased living with her husband, and she thereupon brought this suit to have said deed removed as a cloud upon her title.

Considerable space is devoted by counsel in their briefs to the discussion of the validity and effect of said deeds respectively in view of the admitted fact that the premises conveyed were the homestead of the complainant and her husband, and that neither deed was so executed as to operate, under the statute, as a conveyance of an estate of homestead. On this point, counsel for the complainant insist that the deed to her was executed prior to the marriage, and before said premises were occupied as a homestead, and therefore that the title vested in her before that estate attached. This contention is based upon the theory, either that said deed is shown by the evidence to have been delivered by the grantor to his attorney for the complainant prior to the marriage, so as to constitute in itself a sufficient delivery to her, under the rule that the delivery of a deed by the grantor to a third person for the grantee, even without his knowledge, may constitute in law a sufficient delivery to vest title in the grantee; or that the delivery of the deed to said attorney is shown to have been made in escrow for the complainant, and that upon the second delivery after the marriage, the title conveyed related back to the first delivery, so as to vest the fee in the complainant prior to the vesting of the estate of homestead.

We have examined the record with care and are unable to find any foundation for either of these theories. There is no evidence of any delivery by the grantor to his attorney, either in escrow or otherwise. True the deed was in the attorney's hands for delivery, but so far as appears, said attorney held the instrument merely as the agent of the grantor, and his possession was in law the possession of the grantor. The act of the grantor in handing the deed to his attorney, or in leaving it with him, with instructions to deliver it to the complainant

·as soon as the marriage was solemnized, was not a parting with the instrument with the intention of relinquishing all dominion over it, but merely putting it into the hands of an agent whose possession, so long as it continued, was the possession of the principal. Until the agent thus charged with the duty of making delivery actually delivered the deed, the instrument was no more operative than it would have been if it had remained in the personal custody of the grantor, and as the evidence shows that the agent made no delivery, but merely handed the deed back to the grantor, the only delivery shown by which the conveyance became effectual was the one made by the grantor in person two days after the marriage was solemnized, and after the estate of homestead had attached.

It is not questioned that, under our present statute, a conveyance by a husband directly to his wife is valid, so as to vest in her all his title capable of being transferred by the instrument of conveyance. See *Crum* v. *Sawyer*, 132 Ill. 443; *Hamilton* v. *Hamilton*, 89 id. 349; *Thomas* v. *Mueller*, 106 id. 36. The validity and effect of the deed therefore must be viewed in the same light as it would if any other person not sustaining to the grantor the marital relation had been grantee.

Our statute in relation to exemptions provides that no conveyance of the estate of homestead shall be valid, unless it is in writing, and subscribed by the householder and his or her wife or husband, if he or she have one, and acknowledged as other conveyances of real estate are required to be acknowledged, or possession is abandoned or given pursuant to the conveyance. Under this statute, as has frequently been held, a conveyance not executed as therein required, where there is no abandonment or delivery of possession, can have no effect upon the estate of homestead, and where the property conveyed is subject to said estate, and is not worth exceeding $1000, the conveyance is invalid and passes no title. But where the property is worth more than $1000, the conveyance passes the title, subject to the estate of homestead, or rather,

it passes the excess over the amount of the homestead right. *Eldridge* v. *Pierce*, 90 Ill. 474; *Browning* v. *Harris*, 99 id. 456; *Hartman* v. *Schultz*, 101 id. 437; *Gage* v. *Wheeler*, 129 id. 197; *Kitterlin* v. *Milwaukee Mechanics' Mut. Ins. Co.* 134 id. 647.

In the case last cited, the rule was laid down that, "when the value of the property to which the estate attaches is more than $1000, the excess is unaffected by the statute, but when its value is $1000 or less, the whole interest of the house-holder is comprised within the estate of homestead." In that case the value of the property to which the estate of home-stead attached was less than $1000, and it was held that a conveyance of the fee by the husband to his wife, with cove-nants of warranty, did not constitute a sale or transfer of the property, or a change in the title thereto, within the meaning of the condition in a policy of insurance, which provided that, if the property insured should be sold or transferred, or if any change should take place in the title thereto, without the con-sent of the insurance company indorsed on the policy, said policy should be wholly void.

Applying then the rule which seems to be well established by the foregoing decisions, it follows that the question whether the deed to the complainant from her husband conveyed to her any interest in the property attempted to be conveyed, must depend upon whether said property at the time was worth more than $1000. That question has been answered by the Circuit Court in the affirmative, and we are of the opinion that its finding in that respect is fully supported by the evidence. It is true the testimony as to value does not apply specifically and in terms to the date of the delivery of said deed. The witnesses who testified on that subject seem to speak of its value at the time they were examined, which was nearly a year and a half after the delivery of said deed. They fix its value, however, at from $2500 to $3000. But the deed to Arthur H. Barrows, which was dated October 8, 1889,

a little less than three months after the delivery of the deed to the complainant, expressed a consideration of $3000, and Arthur H. Barrows, when examined as a witness, testified that he agreed to pay that sum for it, and that at that time $3000 was its fair value. This evidence, taken in connection with the fact that the house was a new one, having been just completed when the complainant and her husband moved into it upon their marriage, and that there is an entire absence of evidence tending to show any material alteration in its circumstances, condition or value between the time it was first occupied by the complainant and her husband and the date of the trial, constitutes a sufficient basis for the conclusion that at the date of the delivery of said deed to the complainant, the property was worth as much as at the date of the trial, viz, from $2500 to $3000. It follows that the deed to the complainant, instead of being void or inoperative as the defendants insist, conveyed to the complainant a substantial interest in said property, viz, the excess over the $1000 in value covered by the estate of homestead.

Counsel for the complainant suggest that, whatever may be the effect at law of said deed as a conveyance to the complainant of so much of the property as was covered, or, so to speak, appropriated by the homestead estate, it should, in equity, be treated as having the effect of transferring the estate to the complainant subject to the homestead estate of her husband. All we need to say in answer to this suggestion is, that the exigencies of this case do not require its consideration. The controversy is between the complainant and Arthur H. Barrows, both claiming under deeds purporting to convey precisely the same interest, and it being established that the complainant's deed conveyed to her some interest, it is clear that whatever that interest may be, it is precisely the same interest, no more nor less, which the complainant's husband subsequently attempted to convey to Arthur H. Barrows. Without making any further attempt therefore to define the precise estate, either

legal or equitable, which either of these deeds, if the other was not in existence would convey, the question for us to determine is simply one of priority between these two grantees.

The deed to Arthur H. Barrows, though later in date, was first placed on record, and if he can be held to be a *bona fide* purchaser for value without notice, he is entitled to the priority, otherwise not. The court below disallowed his claim to the character of a *bona fide* purchaser, on the ground that the deed to him was executed by the grantor and accepted by him without any valuable consideration, and with intent to defraud the complainant of her title to said property, and the question presented for our determination is, whether the decree in that respect is supported by the evidence. The court below saw and heard the witnesses, the evidence at the hearing having been given orally in open court, and said court was therefore in a better position than we can be to judge of their relative credibility, and to determine all those questions of fact as to which there is a conflict or discrepancy in the evidence. Its findings upon controverted questions of fact are entitled to much the same weight and credit usually accorded to verdicts of juries in suits at law, and they should not be disturbed unless we are clearly convinced that they are contrary to or unsupported by the evidence.

As has been already seen, the deed to Arthur H. Barrows recited and acknowledged a consideration of $3000, and Barrows testifies that he paid said consideration by giving his father his promissory note for that sum. But we think the evidence strongly tends to show that the giving of said note was a mere subterfuge, and that it was never intended by either grantor or grantee that it should be paid. In this connection the intimate relationship of said parties as father and son should be considered, as well as the surrounding circumstances and their previous dealings with each other. The father was an old man about seventy-eight years of age, and the son a man in middle life, and it appears that the father had already

conveyed to his son a large portion if not the bulk of his property. Between the father, who had been married less than three months, and the complainant, who was his second wife, serious disagreements and difficulties had arisen, although the son claims that he was entirely ignorant at the time that such was the case.

The account of the negotiations which resulted in the execution of said deed, as given by Arthur H. Barrows himself in his testimony, is, in substance, that on the day prior to the execution of said deed, he was driving along the street, and his father, who was on the sidewalk, beckoned to him as though he wanted to speak to him; that he drove up to where his father was, and that his father said to him that he wanted to sell him this property; that he told his father in reply that he already had property enough on his hands, and that his father then said that he would sell him said property and take his note for it on time drawing six per cent interest, and that he should come in the next afternoon and he would have the deed ready; that he came in as requested and received the deed and gave his father as the only consideration for the property his unsecured note for $3000.

The price for which the note was given was, as Arthur H. Barrows admits, the full value of the property, although he knew at the time that, as the complainant had not joined in the deed, any title he could acquire was subject to the estate of homestead, and to the complainant's inchoate right of dower. He admits that he knew that the complainant had not joined in the deed, and that he made no inquiries why she had not done so, and no efforts to procure her signature, although, as the evidence seems to show, she was near at hand, and might easily have been seen and consulted. Although he claims to have been wholly ignorant of any disagreements between his father and his step-mother, he manifested no interest in the question as to how the conveyance would affect the rights or

meet the wishes of his step-mother. On that whole subject he seems to have preserved an absolute if not a studied silence.

Within a few days after said deed and note were executed, he had another transaction with his father in which, according to his account of it, his father came to him and gave him some inkling of his domestic difficulties and proposed an arrangement by which his son should support him during his life and give him a decent burial when dead. As a result of that interview the father surrendered to the son the $3000 note, the consideration of such surrender, as is claimed, being, an oral agreement then entered into by the son to support his father during life, furnish him money when he needed it, take care of him and furnish him a nurse when sick, and bury him when dead. In this transaction no provision was made for the support of the complainant and no attention whatever paid to her rights.

The evidence further tends to show that, sometime in the year 1887, Bushrod W. Barrows claimed that his son was indebted to him in the sum of $6000 for the rent of certain lands, said claim being denied by the latter, and that a settlement was had between them, in pursuance of which said Bushrod W. Barrows relinquished and abandoned said claim, and conveyed to his son his interest, which was an undivided two-thirds, in a farm of 756 acres. Said farm is shown to have been worth $40 per acre, and to have been subject to a mortgage for $14,000. The principal if not the sole consideration paid by Arthur H. Barrows for the relinquishment of said claim and the conveyance to him of said farm by his father was, a contract in writing by which he agreed to furnish his father, during his natural life, such amount of money, not exceeding $1000 per annum, as would be sufficient to support and maintain him, and to take care of him in sickness. He also at the same time executed to his father his promissory note for $2500, but he now claims that said note was given with the distinct understanding and agreement on the part of his father that it

never should be used or collected, and it appears that since the execution of the deed purporting to convey to Arthur H. Barrows said homestead property, said note has been surrendered to him by his father without payment.

It further appears that at the time of the surrender of the $3000 note given for the homestead property, the previous written agreement by which Arthur H. Barrows had obligated himself to support his father during his natural life was outstanding and in full force, and that as a part of the transaction by which the new verbal agreement for such support was entered into, the previous written agreement was surrendered up and cancelled. By the new agreement, so far as appears, Arthur H. Barrows undertook no obligation in any material degree more burdensome than that already resting upon him. He was already bound to furnish money for his father's support to the amount of $1000 per annum, if that amount should be necessary, and there is no evidence that the support provided for by the new contract would be likely to cost him more than that.

It seems too plain for argument that the real consideration for the oral contract by which Arthur H. Barrows obligated himself to support his father during life, was the surrender of the former contract to the same effect substantially, and it follows that the $3000 note was given up to him without any real equivalent. When all these transactions and the situation and relations of the parties are considered, the conclusion is in our opinion a fair one, that it was never intended by either the maker or payee, that said note should ever be paid, or that it should constitute the evidence of a *bona fide* existing debt, but that it was executed for the mere purpose of creating an apparent consideration for the conveyance to Arthur H. Barrows of said homestead property.

It can not be doubted that the intention and purpose with which Bushrod W. Barrows executed said deed to his son was, to defeat his wife out of the interest in the homestead prop-

erty which she held by virtue of his previous conveyance to her, and it is difficult, in view of all the evidence, to believe that Arthur H. Barrows, at the time his father executed said deed to him, did not know of the intent and purpose of his father in making such conveyance, or at least, was not put upon inquiry which, if properly followed out, would have led to knowledge of such intention. The transaction itself was not in the usual course of business. The failure of the grantor to obtain the joinder of his wife with him in the execution of the deed, especially as the property conveyed was the homestead, was a circumstance which, even as between strangers, would have been likely to awaken inquiry, and *a fortiori* would that seem to be the case where the transaction was between father and son. It certainly would have been very natural for Arthur H. Barrows to inquire of his father whether his stepmother was to join in the deed, and if informed that she was not, to inquire the reason either of him or of her. His absolute silence is difficult to explain, except upon the theory that he was already in possession of sufficient facts, or sufficiently understood the situation, to make inquiries unnecessary or even indiscreet.

Furthermore, the amount of the consideration expressed in the deed and embodied in the note gives further reason to believe that the transaction was not a *bona fide* one. No witness pretends to fix the entire value of the property, if it had been clear of all incumbrances, at over $3000, and Arthur H. Barrows himself testifies that that was its fair value. It was subject however to an estate of homestead and an inchoate right of dower, which no conveyance from Bushrod W. Barrows could defeat or extinguish. Manifestly these incumbrances very largely reduced the cash value of the estate which said grantor was capable of conveying. Yet Arthur H. Barrows, who, according to his own testimony, was in no need of the property and had no desire to purchase it, accepted, without objection, his father's offer to sell the property for $3000, and

gave his note for that sum. No cavil was made about the price, which under the circumstances was clearly exorbitant, and no question raised or solicitude manifested as to whether the complainant's joinder in the deed might not be obtained so as to give a perfect title.

Arthur H. Barrows testified, it is true, that, at the time of the execution of said conveyance to him, he had no knowledge of any difficulties between the complainant and her husband, and that he was entirely ignorant of the fact that his father had executed any deed to the complainant. It is difficult to explain the facts to which we have alluded consistently with this denial, and the strength of said denial is very considerably impaired by certain answers given by him to questions put to him on cross-examination. It appears that both of said deeds were drawn by A. K. Lowry, Esq., who seems to have been the attorney and legal adviser of Bushrod W. Barrows and perhaps of his son, and both deeds were acknowledged before him as notary public. Various questions were put to Arthur H. Barrows on his cross-examination, as to whether he did not ask Lowry at the time the deed to him was executed, about the former deed to the complainant. Among other questions he was asked if he inquired of Lowry whether such other deed had been recorded, to which he answered: "I don't recollect; I don't think I asked about it at all." He was then asked if he could swear positively, and answered: "I might have done it, but I don't think I did." Being pressed further by the question whether he was positive that he did not, he answered: "No sir; I am not positive; I might have asked him about the other deed—whether it was recorded." If it be true, as he testified on his direct examination, that he at that time had never heard of the other deed, it is incomprehensible that he should have been in doubt whether he inquired as to the fact of its having been recorded. If he knew nothing about such deed it is perfectly clear that he could have made no such inquiry, and his being in doubt on that point gives rise to very

substantial reasons for doubting his accuracy when he testifies; that he knew nothing at the time of the existence of the former deed.

We are of the opinion that the court below was fully justified by the evidence in finding that Arthur H. Barrows was not a *bona fide* purchaser of said premises for value, and in decreeing that he take nothing by the conveyance to him; that his deed be set aside and cancelled, and that he release to the complainant all title to said property held by him.

We have not deemed it necessary to express any opinion upon the point quite earnestly pressed upon our attention, that the possession by the complainant, jointly with her husband and grantor, was constructive or at least implied notice of her rights under her unrecorded deed, as the evidence seems to us to fully justify the decree, without resorting to the doctrine of constructive or implied notice from possession.

It is objected that the decree is erroneous in requiring Arthur H. Barrows to release to the complainant all his interest in the premises in question, the contention being, that the requirement should have been limited to such interest as he derived from said conveyance from his father. As he has shown no interest in said premises other than that derived from said conveyance, the point made is clearly without merit.

Some other objections are raised to the decree which we have duly considered, but think they call for no remark further than simply, that in our opinion they are not well taken.

The decree of the Circuit Court will be affirmed.

*Decree affirmed.*