A. E. STAFFORD

*v.*

NEALY C. WOODS.

*Filed at Ottawa, January 19, 1893.*

**1.** HOMESTEAD — *limited to the life of the estate to which it is incident.* The estate of homestead can in no case be more extensive than the interest to which it attaches and of which it forms a part. If the householder has an estate in fee, the estate of homestead may likewise be a fee, but if he has only an estate for life or for years, the estate of homestead will expire at his death or at the expiration of the term for years.

**2.** So, where the householder has merely an equitable interest under a contract of purchase which is liable to be terminated by his non-performance of the contract, anything having the legal effect of terminating the right of possession under the contract, will at the same time and for a like reason terminate the estate of homestead.

**3.** SAME — *estate, how transferred — assignment of contract.* The holder of an estate of homestead in land held by him under a contract of purchase, can not transfer the same by his assignment of the contract in which his wife does not join. By such an assignment the assignee will acquire no right of possession which can prevail against the homestead estate, which he can assert against either the assignee or his widow after his death, she still continuing to occupy the premises.

4.  SAME — *how defeated — vendor's lien.* Where the vendor of land, by the terms of the contract of sale, has the option, in case of non-payment of the purchase money as therein provided, to declare the contract forfeited and determined, and to re-enter and take possession of the premises sold, such forfeiture and re-entry will defeat the estate of homestead of the purchaser, and the vendor may maintain ejectment against the widow of such purchaser upon failure to make payments of the purchase money.   And the grantee of such vendor will have the same right to re-enter or maintain ejectment.

5.  By section 3 of the Homestead act of 1872 no homestead can exist against a claim for the purchase money of the land to which it is attached.   Whether, then, the vendor of premises sold on credit, or his grantee, be regarded as the owner of the fee subject to a contract of sale which he has the right to rescind, or, as a mortgagee in possession, he may recover possession by action of ejectment as against the widow of the purchaser.

6.  EJECTMENT — *involves only legal rights.*   In the action of ejectment the courts can deal only with the legal title, and have no power to investigate or adjust partnership accounts, or protect mere equitable rights.

WRIT OF ERROR to the Circuit Court of Knox county ; — the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. WILLIAMS, LAWRENCE & WILLIAMS, for the plaintiff in error :

Ejectment lies only where lands have been unlawfully entered or are unlawfully withheld.   *Stow* v. *Russell,* 36 Ill. 18, 36 ; *St. L., A. & T. H. R. R. Co.* v. *Karnes,* 101 id. 402, 408.

The homestead could only be released by an instrument in writing, subscribed by the householder and his wife, and acknowledged, as required by the act.   Under this statute, our court holds the estate of homestead remains to a tenant during the continuance of his lease.   *Watson* v. *Saxer,* 102 Ill. 585, 591.

In which case this court say : "Under this statute, a tenant holding a leasehold interest in premises may claim the benefit of the statute as well as the owner in fee.   Indeed the holder of any possessory interest in lands without regard to the extent of his title, may invoke the aid of the statute." Id. 591.

The act of 1873 created an estate of homestead, which was then unknown to the law ; this new estate is limited only as to its value, being $1000, and not by any specific degree of interest or title to property to which it attaches. A formal conveyance of the premises, constituting the homestead without formal release of the homestead, in no manner interferes with the homestead rights, but is consistent therewith and subservient thereto. *Eldridge* v. *Pierce*, 90 Ill. 474.

Such being the Homestead act, and Stafford and his wife being in possession of these premises under this contract of purchase, he (Stafford) could not alienate his interest in the land under the contract, without joining his wife with him. *McKee* v. *Wilcox*, 11 Mich. 358.

Woods is in the position simply of one who, having purchased the premises subject to a mortgage, is in duty bound to pay the mortgage, and can properly acquire the unincumbered title only through payment and discharge of the incumbrance. In such case, having paid the purchase money, he could not set it up against the wife's claim of dower or homestead. *Selb* v. *Montague*, 102 Ill. 446 ; *McCabe* v. *Swap*, 14 Allen, 188.

Mr. J. A. McKENZIE, for the defendant in error :

There is no homestead right as against purchase money of the premises.

The express words of the statute are sufficiently plain upon this proposition. Statutes, 1873, sec. 3.

This statute is precisely the same as the law of 1851. *Shear* v. *Reynolds*, 90 Ill. 238.

The statute is plain that no homestead right can exist as against claim for purchase money of the land to which it is attached. *Bush* v. *Scott*, 76 Ill. 524.

We make no pretense that this section applies where a pre-existing debt for purchase money is liquidated by money borrowed for that purpose by vendee. *Austin* v. *Underwood*, 37 Ill. 438.

But it is purchase money, if advanced at time of purchase for that purpose. *Austin* v. *Underwood*, 37 Ill. 438.

Money paid at request of purchaser to complete purchase of homestead is deemed purchase money. *Magee* v. *Magee*, 51 Ill. 500; see, also, *Williams* v. *Jones*, 100 id. 362; *Allen* v. *Hawley*, 66 id. 164; *Selb* v. *Montague*, 102 id. 446.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This was an action of ejectment, brought by Nealy C. Woods against Mrs. E. A. Stafford, the widow of Thomas D. Stafford, deceased, to recover possession of a part of lots 15 and 16, in a certain subdivision in the city of Galesburg, the plaintiff claiming title in fee. Both parties claim under Robert Chappell as their common source of title.

On the 20th day of September, 1872, Thomas D. Stafford entered into a contract for the purchase of said premises of Robert Chappell for $2,000, of which $300 was paid at the date of the contract; the residue to be paid in certain installments thereafter. The contract, at the time it was made, was evidenced by a receipt given by Chappell for the cash payment, the receipt also describing the land and expressing the terms of the sale. At that date Chappell had not acquired title to the premises, but a few days later, having obtained title, he put Stafford into possession under the contract. Stafford was then the head of a family residing with the same, and on taking possession of the lots purchased, he moved on to them with his family and established his homestead thereon.

On the 7th day of November, 1872, formal articles of agreement were executed by Chappell, of the first part, and Stafford, of the second part, whereby Chappell on his part, covenanted and agreed that, if Stafford should first make the payments and perform the covenants thereinafter contained, he would convey and assure to Stafford said lots in fee, clear

of all incumbrances, by a good and sufficient warranty deed, reciting, as a part of the description of the lots, that they were the same upon which Stafford then resided. Stafford, on his part, covenanted and agreed to pay Chappell $2,000 as follows: $300 cash in hand, the receipt whereof was acknowledged, and the residue in four installments, viz., $200 January 1, 1873, $500 January 1, 1874, $500 January 1, 1875, and $500 January 1, 1876, with ten per cent annual interest, and to pay all taxes, assessments or impositions that might be legally levied or imposed upon the premises subsequent to the year 1871. The instrument also provided as follows:

"And in case of the failure of the said party of the second part to make either of the payments or perform any of the covenants on his part, hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined, and said Chappell shall have the right to re-enter and take possession of the premises aforesaid, and thereupon resell the same, giving ninety days' notice of time and place of sale by publication in newspaper in city of Galesburg, for cash, applying the proceeds in satisfaction of all payments, if sufficient, and any surplus above principal, interest and expenses returned to Stafford, who shall likewise make up any deficiency, if any. It is mutually agreed that all the covenants and agreements herein contained, shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties."

Shortly after the articles of agreement were executed, Stafford's wife died, and in August, 1873, he married the defendant. After their marriage, Stafford and the defendant, his wife, continued to occupy the premises in question as their homestead until Stafford's death, which took place in 1890. Since that time the defendant, his widow, has continued to occupy the premises as her homestead.

Woods, the plaintiff, was a son-in-law of Stafford, and at the date of the purchase of the premises in question, Stafford and

Woods were partners in the business of manufacturing and selling brick in the city of Galesburg, and so continued until Stafford's death. At the date of the purchase Stafford's eyesight was failing, and he soon afterward became blind, and thereafter Woods had principal charge of the business of the firm.

The payments on the contract were not made promptly on time, but from time to time Chappell had use for brick, which were delivered to him by the firm, and credited on the contract. In this way payments were made so that the amount remaining due and unpaid November 4, 1878, was $848.05. On that day Stafford endorsed on the contract an assignment, by which, for value received, he assigned all his interest therein to Woods, and delivered the contract so endorsed to Woods. In this assignment the defendant did not join.

Woods, after the assignment, presented the contract to Chappell and obtained from him a warranty deed of the premises to himself, and gave back a mortgage to secure the residue of the purchase money remaining due. This mortgage seems to have been paid several years before Stafford's death, and there is evidence tending to show that it was paid by the delivery by Woods to Chappell of a quantity of brick, but whether the brick thus delivered belonged to the firm or to Woods individually does not clearly appear.

At the trial, which was had before the court, a jury being waived, Mrs. Stafford set up as her defense, that she had an estate of homestead in the premises in question which had not been extinguished, and which entitled her to the possession thereof. This defense was disallowed by the court, and the defendant was found guilty of wrongfully withholding the premises from the plaintiff, and judgment was thereupon rendered that the plaintiff recover possession of said premises of the defendant, and establishing the plaintiff's title thereto in fee. To reverse this judgment the defendant now brings the record to this court by writ of error.

The only question for us to consider is, whether at the commencement of the suit, Mrs. Stafford had an unextinguished estate of homestead, entitling her to retain possession of the premises sought to be recovered as against the defendant. There can be no doubt, we think, that the defendant's husband, prior to the assignment by him of his contract of purchase, had an estate of homestead which he would have been able to assert, at least as against creditors. The statute in force at that time limited the estate to the value of $1,000, but not in respect to any specific degree of interest or character of title in the property to which it attached. *Eldridge* v. *Pierce*, 90 Ill., 474. It provided: "That every householder having a family shall be entitled to an estate of homestead, to the extent in value of $1,000, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy on execution, sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided."

Stafford, prior to the assignment of his contract of purchase to Woods, was in the rightful possession of the premises under the contract, and was occupying the premises as his residence. He therefore, by the express terms of the statute, had an estate of homestead which attached to and was co-extensive with the right and title which he had in the premises by virtue of the contract. In *Watson* v. *Saxer*, 102 Ill., 585, we held that, under the present statute, the holder of any possessory interest in lands, without respect to the extent of the title, may invoke the aid of the statute, and therefore, that a party in possession of premises under a contract of purchase, and occupying the same as a residence with his family, is entitled to a homestead right therein, to the value of $1,000, as against all creditors, except his vendor for unpaid purchase money.

14—144 ILL.

But it seems too plain for argument that the estate of home-stead can in no case be more extensive than the interest to which it attaches and of which it forms a part. If the house-holder has an estate in fee, the estate of homestead may like-wise be a fee, but if the householder has only an estate for life or for years, the estate of homestead will expire at his death, or at the expiration of the term for years. In this case the in-terest held by Stafford at the time he assigned his contract was not the fee, but merely an equitable interest which was liable 'to be terminated and defeated by his non-performance of the contract of purchase, and it is manifest that anything which would have the legal effect of terminating the right of posses-sion under the contract, would at the same time and for a like reason, terminate the estate of homestead.

It must be admitted that as Mrs. Stafford did not join in the assignment of the contract, the homestead estate remained un-affected by the assignment. That estate must accordingly be held to stand in the same situation as though the contract of purchase had remained in Stafford's hands down to the time of his death. Woods acquired by the assignment no right of possession which could prevail as against the homestead estate. But he subsequently obtained a conveyance of the fee from Chappell, and was thereby placed in Chappell's shoes, and the question is whether, as the owner of the fee, he has the right, as against the homestead estate, to recover possession. The legal title which Chappell might have asserted, and the rights which the ownership of that title gave, are now vested 'in Woods, his grantee. On the other hand, as Mrs. Stafford did not join in the assignment of the contract of purchase, her home-stead right was not waived or released, and is capable of asser-tion by her precisely as it might have been by Stafford if he were still living and still holding the contract. The rights of the present parties then may be determined upon the basis of those which would have remained in Chappell and Stafford, if there had been no conveyance and no assignment of the contract.

We think it is clear that, if they had been the parties litigant under the conditions here supposed, Chappell could have successfully prosecuted his action of ejectment for the recovery of the possession of the premises in controversy from Stafford, notwithstanding the estate of homestead which the latter had acquired. This follows, in the first place, from the terms of the contract under which the homestead estate was acquired and is now sought to be asserted. The last installment of the purchase money became due January 1, 1876, yet, on the 4th day of November, 1878, the date of the assignment of the contract to Woods, $848.05 of the purchase money remained due and unpaid, and no portion of that sum, so far as the evidence shows, has since been paid by Stafford, in his lifetime, or by his widow since his death. By the terms of the contract, the vendor had the option, in case of non-payment of the purchase money as therein provided, to declare the contract forfeited and determined, and to re-enter and take possession of the premises sold. The estate of homestead, which was derived solely from the contract of purchase, was necessarily subject to the terms and provisions of that contract, and anything which put an end to the right of possession acquired under the contract, for the same reason put an end to the estate of homestead. That estate could have no independent existence superior to the interest in the premises out of which it was carved, but necessarily terminated with that interest. The purchaser's default in the payment of the purchase money gave the vendor the right, by electing to avoid the contract, to re-enter and take possession. Upon his making such election, the purchaser's right of possession terminated, and the estate of homestead necessarily fell with it.

In the second place, by the third section of the act in relation to exemptions, it is provided that no property shall, by virtue of that act, be exempt from sale for a debt or liability incurred for the purchase thereof. As was said in *Bush* v. *Scott*, 76 Ill., 524 : " The statute is plain to the point that no

homestead right can exist as against a claim for the purchase money of the land to which it is attached." If then we regard Chappell, or Woods, his grantee, not as the owner of the fee, subject to a sale which he had a right to declare void, but merely as a mortgagee after condition broken, which is the light most favorable to Mrs. Stafford in which he can be viewed, he has the right to avail himself of any remedy to which he is entitled as mortgagee, and among them, that of bringing ejectment to recover possession of the mortgaged premises, and his debt being for the purchase money, no homestead right on the part of the mortgagor can be successfully interposed as an impediment to his so doing. We are of the opinion that in either of the views above suggested, the finding and judgment of the Circuit Court must be sustained.

It is claimed that there is evidence having some tendency to show, that Woods, after obtaining a conveyance of the premises in question from Chappell, paid off the unpaid purchase money by delivering to Chappell a quantity of brick belonging to the firm of which Stafford was a member, and that at least to the extent of Stafford's interest in the brick so delivered, the payment should be deemed to have been made in his interest, and that it should therefore enure to the benefit of Mrs. Stafford's homestead estate. Whatever equitable rights may have grown out of such diversion of partnership assets, if any were diverted, it is sufficient to say that in this suit we can deal only with the legal title, and have no power to investigate or adjust partnership accounts or protect mere equitable rights. That can be done only in another proceeding and in another forum.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*